905 A.2d 422

Karen PRIDGEN, Individually and as Personal Representative of the Estate of Lendon N. Pridgen, Deceased; and as Personal Representative of the Estate of Anthony W. Cipparone, Deceased and Denise Diggen, Individually and as Personal Representative of the Estate of Daniel Diggen, Deceased, and Debra Johnson, Individually, and on Behalf of Tyler Johnson, as Parent and Natural Guardian of Tyler Johnson, a Minor

v.

PARKER HANNIFIN CORPORATION and Basco Flying Service, Inc. and Textron Lycoming Reciprocating Engine Division and Textron, Inc. and AVCO Corporation.

Appeal of Textron Lycoming Reciprocating Engine Division, Textron, Inc. and AVCO Corporation.

Supreme Court of Pennsylvania.

Argued Oct. 19, 2005.

Decided Aug. 22, 2006.

406

Ann Marie Thorton Field, James E. Robinson, Patrick J. O'Connor, Elizabeth Chambers Bailey, Philadelphia, for Textron Lycoming Reciprocating Engine Div./Textron, Inc./AVCO Corp., appellants.

Arthur A. Wolk, Philadelphia, Bradley J. Stoll, Fort Washington, for Karen Pridgen, Debra and Kevin Johnson, Denise Diggen, appellees.

BEFORE: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice SAYLOR.

Appeal was allowed to determine whether interlocutory appeals as of right lie from a common pleas court's orders denying summary judgment in consolidated product liability cases, on motions of defendant airplane engine manufactures grounded on an eighteen-year federal statute of repose.

Under the General Aviation Revitalization Act of 1994,[1] claims for death, injury, and property damage involving certain types of aircraft asserted against manufacturers generally are barred if the accident occurred more than eighteen years after the delivery of the aircraft to the first purchaser. *See* GARA § 2(a) (prescribing that "no civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as a manufacturer if the accident occurred ... after the applicable limitation period [of eighteen years]"). GARA, however, contains an express "rolling provision" that, while preserving the approach of foreclosing causes of action against manufacturers related to potentially defective aircraft replacement components after eighteen years, prescribes that the eighteen-year period commences upon the date of installation of such parts. *See* GARA § 2(a)(2) (providing that no civil action may be brought "[w]ith respect to any new component, system, subassembly or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused such death, injury, or damage, after the applicable limitation period beginning on the date of completion of the replacement or addition"). The statute also includes an exception denying manufacturers repose in the event of misrepresentation, concealment, or withholding of essential information regarding

1. Pub.L. No. 103–298, 108 Stat. 1552 (codified as amended at 49 U.S.C. § 40101, Note) (hereinafter "GARA").

performance, maintenance, or operation of an aircraft.[2] Further, GARA expressly preempts inconsistent state laws. *See* GARA § 2(d).

The civil actions underlying these appeals arise from a fatal aviation accident that occurred in August 1999, in North Lima, Ohio, in which a thirty-one-year-old Piper PA–32–260 airplane crashed on departure from a local airport. Several people were killed, and another suffered serious injuries. The consolidated actions were commenced in the common pleas court in 2001 by Appellees, representatives of the crash victims and/or their estates, against Appellants, Textron Lycoming Reciprocating Engine Division, Textron, Inc., and AVCO Corporation, as well as others. Appellants were described in the complaints as the "designer, manufacturer, seller, supplier, overhauler, repairer, maintainer, and product support servicer of the Lycoming engine installed on the [accident] aircraft." Amended Complaints ¶ 10. The complaints asserted identical claims of negligence, strict liability, and breach of express and implied warranties. Appellees did not dispute that the original engine assembly was installed on the accident aircraft more than eighteen years before the accident. They alleged, however, that the crash was caused by a failure of engine and fuel system components that were replaced and overhauled within eighteen years of the date of the accident. Further, the complaints averred that Appellants had knowledge of the alleged defects and engaged in intentional misrepresentation, concealment, and withholding relative to them. These sets of

2. Specifically, under the exception covering misrepresentation, concealment, and withholding, the bar to the assertion of claims does not apply if:

> [t]he claimant pleads with specificity the facts necessary to prove, and proves, that the manufacturer with respect to a type certificate or airworthiness certificate, or obligation with respect to continuing airworthiness of, an aircraft or a component, system, subassembly, or other part of an aircraft knowingly misrepresented to the Federal Aviation Administration, or concealed or withheld from the Federal Aviation Administration, required information that is material and relevant to the performance or the maintenance or operation of such aircraft, or component, system, subassembly, or other part, that is causally related to the harm which the claimant allegedly suffered. GARA § 2(b)(1).

allegations were obviously included at least in part to implicate exceptions to GARA's statute of repose.

Appellants filed identical motions for summary judgment in both actions, based, *inter alia,* on GARA. Appellants highlighted that more than eighteen years had elapsed between the date on which the engine was installed and the date of the accident, and that they did not manufacture or supply any of the allegedly defective parts that had been replaced within eighteen years of the 1999 accident.

In response, Appellees developed that Appellants hold the Federal Aviation Administration type certificate for the engine model that was installed on the accident aircraft,[3] supplied specifications pursuant to which replacement components were selected and installed, and, indeed, marketed such parts under their own classification system under a Textron part number.[4] Since the replacement parts that were installed on the aircraft within eighteen years of the accident and that were alleged to have caused it were consistent with the type certificate, Appellees argued that Appellants were not entitled to GARA protection, in view of its rolling provision. Appellees also argued that material facts were in dispute concerning the application of GARA's misrepresentation, concealment, and withholding exception.

In September 2003, the common pleas court denied Appellants' motions without opinion. Appellants lodged interlocutory appeals within thirty days after the entry of such orders,

---

**3.** A type certificate issued by the Federal Aviation Administration authorizes an entity to manufacture a particular aircraft or engine and is issued after the applicant establishes that the "type design," including all drawings, specifications, and data necessary to insure airworthiness, *see* 14 C.F.R. § 21.31, meets applicable design and testing standards. *See* 49 U.S.C. § 44704(a); 14 C.F.R. § 21.21. *See generally* 14 C.F.R. §§ 21.11–21.53. The governing federal regulatory scheme contemplates that at all times there will be a designated entity for an aircraft or component that is burdened with reporting duties and responsibilities, to foster continued product safety. *See Burroughs v. Precision Airmotive Corp.,* 78 Cal.App.4th 681, 93 Cal.Rptr.2d 124, 133 (2000).

**4.** Appellees have acknowledged in various submisssions, however, that the replacement parts in issue were not physically manufactured by Appellants or supplied by them within the relevant eighteen year period under GARA. *See infra* note 15.

seeking to appeal as of right under Pennsylvania's collateral order doctrine, as set forth in Rule of Appellate Procedure 313. *See* Pa.R.A.P. 313(b) ("A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.").

In its initial opinion under Rule of Appellate Procedure 1925(a), the common pleas court did not articulate the reasons supporting the denial of summary judgment, but rather, advanced the position that the court's orders were not collateral orders subject to interlocutory appellate review as of right. Initially, the court referenced the general principle that an appeal may be taken as of right only from a final order, such as one that disposes of all parties and all claims, as well as Appellate Rule 313(b)'s exception for collateral orders. Further, the court set forth the well-established criteria for a collateral order, in that:

1. the right asserted must be separable from and collateral to the main cause of action;

2. the right involved must be too important to be denied review; and

3. the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost.

*Pugar v. Greco*, 483 Pa. 68, 73, 394 A.2d 542, 545 (1978) (citing *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949)); *accord Ben v. Schwartz*, 556 Pa. 475, 480–83, 729 A.2d 547, 550–52 (1999); *Geniviva v. Frisk*, 555 Pa. 589, 592, 725 A.2d 1209, 1211 (1999).[5] The court also expressed the concern that the collat-

---

**5.** Since its decision in *Cohen,* the United States Supreme Court has adjusted the federal framework for assessing collateral order status by adding a requirement that the order or directive under review conclusively determine the disputed question. *See, e.g., Johnson v. Jones,* 515 U.S. 304, 310, 115 S.Ct. 2151, 2155, 132 L.Ed.2d 238 (1995). This Court, however, has not yet specifically considered whether to adopt this factor as a particular element of the collateral order doctrine as

eral order doctrine should be construed narrowly to avoid undermining the general rule authorizing appellate review of only final orders, and to prevent litigation from being delayed by piecemeal review of trial court decisions. *Accord Melvin v. Doe*, 575 Pa. 264, 272, 836 A.2d 42, 46 (2003) ("This Court is committed to preventing the erosion of the principle behind the collateral order doctrine."). Further, it reasoned:

> It is clear that the age of the airplane engine is a central issue in the case and inseparable from its merits. Thus, the question of whether GARA works as a bar to Plaintiffs' action against the Defendants herein is a basic issue rather than one "separable from and collateral to the main cause of action." Moreover, not only is Defendants' issue inseparable from the main cause of action, Defendants also fail to establish that the rights involved go beyond the particular litigation at hand and will be irreparably lost if review of this court's order is postponed until completion of the litigation. Although Defendants may be inconvenienced by postponing appellate review and proceeding to trial, "inconvenience alone does not constitute irreparable loss of the proposed claim."

*Pridgen v. Parker Hannifin Corp.*, No. 4008, July Term, 2001, *slip op.* at 4–5 (C.P.Phila.Oct. 29, 2003) (citations omitted).

In the Superior Court, Appellees filed a motion to quash based on the interlocutory character of the common pleas court's orders, and because Appellees had not complied with the procedural requirements for a permissive interlocutory appeal under Section 721(b) of the Judicial Code, 42 Pa.C.S. § 721(b). *See generally* Pa.R.A.P. 1301–1323.

The Superior Court quashed the appeals by *per curiam* order, and Appellants sought discretionary review by this Court. This Court allowed the appeals, remanded to the Superior Court to determine whether the collateral order

applied in the Pennsylvania courts, *cf. Commonwealth v. Johnson*, 550 Pa. 298, 302 n. 2, 705 A.2d 830, 832–33 n. 2 (1998) (characterizing the federal courts' present formulation of the collateral order doctrine as "substantively similar" to this Court's approach), and the parties to this appeal offer no argument concerning the merits (or disadvantages) of doing so.

doctrine applied, and relinquished jurisdiction. Subsequently, the Superior Court issued an order indicating that it had already considered and rejected Appellants' arguments concerning Appellate Rule 313's applicability, and it once again quashed the appeals.

Appellants again sought discretionary review in this Court, we again accepted the appeals, and we directed the Superior Court to issue an opinion containing the supporting rationale for its orders. In the opinion that followed, the Superior Court recognized that Appellants relied on GARA as a bar to Appellees' underlying claims, as well as *Estate of Kennedy v. Bell Helicopter Textron, Inc.*, 283 F.3d 1107 (9th Cir.2002), in which the United States Court of Appeals for the Ninth Circuit held that a denial of a motion for summary judgment asserting a GARA defense was appealable as a collateral order. The Superior Court also recognized that the *Kennedy* court had determined that the applicability of the statute of repose was an important question that could be resolved separately from the merits of the underlying litigation, and that GARA created an explicit right not to stand trial that would be irretrievably lost if the manufacturer were forced to defend itself in a full trial. *See Kennedy*, 283 F.3d at 1110–11.

Like the common pleas court, however, the Superior Court referenced the jurisprudential interest in containing the breadth of the collateral order doctrine. Further, it attempted to distinguish *Kennedy* based on the assertion that the Ninth Circuit's decision on the ultimate merits disposed of all claims and all parties in the case.[6] Additionally, the Superior Court appeared to reject the position advanced by the *Kennedy* majority that GARA entails an essential right not to stand trial, reasoning as follows:

6. In this regard, the Superior Court appears to have confused the issue of whether the order of the court of original jurisdiction disposed of all claims against all parties with the separate (and irrelevant) question of whether interlocutory review by an appellate court might have the effect of disposing of claims and parties. Further, as Appellants emphasize in their arguments, the issue of finality in terms of the disposition of all claims and parties is outside the straightforward application of the elements of the collateral order doctrine as it pertains to interlocutory appellate review.

[I]t is not clear that the issues raised by the Appellants, *i.e.,* the applicability of the GARA statute of repose, would be irretrievably lost if these appeals are quashed. Although the majority in *Kennedy, supra,* determined that the order in question satisfied the third requirement of the collateral order rule, *i.e.,* irretrievable loss, the dissent in that case stressed that "general aviation manufacturers (such as the instant Appellants) may obtain full review on appeal after final judgment." *Kennedy,* 283 F.3d at 111[6 (Paez, J., dissenting)]. Therefore, allowing this appeal to proceed appears to be contraindicative of the type of scenario contemplated by this Court in *McGourty[ v. Pennsylvania Millers Mut. Ins. Co.,* 704 A.2d 663, 665 (Pa.Super.1997)], wherein characterization of the [common pleas court's] orders as collateral would merely "caus[e] litigation to be interrupted and delayed by piecemeal review of trial court decisions." *McGourty,* 704 A.2d at 665.

*Pridgen v. Parker Hannifin Corp.,* Nos. 3114 & 3115 EDA 2003, *slip op.* at 6 (Pa.Super.Apr. 26, 2005).

After the submission of briefs and the presentation of oral argument in this Court, the parties offered supplemental submissions expressing general agreement that the reasoning of the United States Supreme Court's decision in *Johnson v. Jones,* 515 U.S. at 313–20, 115 S.Ct. at 2156–59 (holding, in the context of the assertion of a qualified immunity defense, that a trial court's summary judgment order that merely determines that the pretrial record sets forth a genuine issue of fact for trial does not meet the requirements of the federal collateral order doctrine), is consistent with a proper application of this Court's collateral order doctrine as embodied in Appellate Rule 313 to the circumstances of the present case. Because the specific basis for the common pleas court's orders in the present case, however, was unknown, as the court did not develop the reasons for that order in its supporting opinion as required under Appellate Rule 1925(a), we remanded for a supplemental opinion while retaining jurisdiction.

In its supplemental opinion, the common pleas court initially credited Appellees' position that, because Appellants held the

type certificate for the accident aircraft, GARA's rolling provision applied, so that Appellants could not claim the benefit of the GARA's general eighteen-year limitation relative to replacement parts specified in the type certificate. *See, e.g., Pridgen v. Parker Hannifin Corp.,* No. 4008, July Term, 2001, *slip op.* at 6 (C.P.Phila.Apr. 7, 2006) ("If plaintiffs can prove these parts caused the engine to malfunction, as Plaintiffs' experts opine, then GARA would not bar their causes of action against the Defendants. The 'rolling aspect of GARA' would apply establishing a new 18 year period for each new part."). The common pleas court also observed that Appellees asserted a design defect theory in the complaint, and indicated that "GARA only protects manufacturers in their capacity as manufacturers." *Id.* at 7–8. Further, the court referenced Section 400 of the Second Restatement of Torts, which indicates that an entity that distributes a product manufactured by another as his own should be subject to liability as though it were the manufacturer. *See* RESTATEMENT (SECOND) OF TORTS § 400 (1965). In this regard, the common pleas court found that whether Appellants should stand in the shoes of the actual manufacturer for the replacement parts was a disputed factual question precluding the grant of summary judgment. Additionally, the court indicated that the question of whether the parts that caused the accident were less than eighteen years old was another disputed issue precluding summary judgment, as there was nothing in the record to indicate when the replacement carburetor was sold to the first purchaser. *Pridgen,* No. 4008, July Term, 2001, *slip op.* at 7. Finally, the court noted that, in responding to Appellants' motions for summary judgment, Appellees requested additional time for discovery concerning the misrepresentation, concealment, and withholding exception to GARA's statute of repose. The court stated that it did not rule on that motion given its decision to deny summary judgment, but that it was its position that Appellees should be afforded additional latitude to pursue discovery on this question, in the event that summary judgment otherwise would be available.

Presently, Appellants acknowledge that, generally, orders denying relief on motions for summary judgment are interlocutory and are not subject to appeals as of right. They contend, however, that the denial of motions grounded on GARA meet all elements of the collateral order doctrine. As to separability, Appellants argue that motions under GARA are materially distinct from many other motions for summary judgment, in that their subject (the age of an aircraft and the date of its first sale) is separate from and collateral to the underlying controversy in aviation tort litigation, whereas the subjects of most summary judgment motions are inherently intertwined with the merits of the underlying dispute. In terms of the importance element, Appellants invoke the federal policy underlying GARA to ameliorate the impact of long-tail liability on a declining American aviation industry, thus fostering regeneration of essential domestic enterprises, creating employment opportunities for citizens, and favorably affecting the balance of trade between the United States and its trading partners. *See generally* H. Rep. No. 103–525(I), at 2 (1994), *reprinted in* 1994, 103rd Cong., 2nd Sess. 1994, U.S.Code Cong. & Admin.News pp. 1638, 1639. Concerning irreparable loss, consistent with the federal *Kennedy* decision, Appellants maintain that Congress conferred on them an essential immunity from suit, thus relieving them from the substantial burden of maintaining a defense through trial of the underlying cases. *Accord Kennedy,* 283 F.3d at 1110 ("GARA ... creates an explicit statutory right not to stand trial which would be irretrievably lost should [the defendant] be forced to defend itself in a full trial."). Appellants rely on both the plain language of the GARA statute ("no civil action ... may be brought ...," GARA § 2(a)), as well as the enactment's substantial legislative history, in support of its position that Congress intended to foreclose the filing of claims to reduce the litigation costs of aviation manufacturers, and not merely to provide them with an additional defense in product liability litigation. *Accord Lyon v. Agusta S.P.A.,* 252 F.3d 1078, 1089 (9th Cir.2001) (holding that "Congress decided that the economic health of the general aviation industry depended on lifting the ... possibility of litigation for the

indefinite future"); *Kennedy*, 283 F.3d at 1111 ("It is clear that an essential aspect of the GARA statute of repose is the right to be free from the burdens of trial."). According to Appellants, there are numerous analogous situations in which immediate collateral order appeals have been recognized because each involved a right that protected the defendant from going to trial, including in the arenas of official, qualified, and Eleventh Amendment immunities; double jeopardy claims; and Speech and Debate Clause challenges.[7]

Again, Appellants have acknowledged that in the immunity cases, the United States Supreme Court has found that some summary judgment orders will not fit within the collateral order doctrine, where they merely reflect the trial court's determination that material facts are in issue concerning the conferral of immunity, as opposed to the resolution of one or more dispositive legal questions. *See Johnson v. Jones*, 515 U.S. at 313–20, 115 S.Ct. at 2156–59. Appellants contend, however, that this case does not merely involve the common pleas court's judgment that material facts are in issue with regard to GARA's applicability; rather, they stress that they seek primarily to challenge the legal standard employed by the common pleas court in determining which entities may be subject to GARA's rolling provision relative to replacement parts.[8]

7. *See* Brief for Appellants at 24 (citing *In re Ford Motor Co.*, 110 F.3d 954, 963 (3d Cir.1997) (citing *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142–47, 113 S.Ct. 684, 687–89, 121 L.Ed.2d 605 (1993) (Eleventh Amendment immunity)); *Mitchell v. Forsyth*, 472 U.S. 511, 525–27, 105 S.Ct. 2806, 2814–16, 86 L.Ed.2d 411 (1985) (qualified immunity); *Nixon v. Fitzgerald*, 457 U.S. 731, 741–43, 102 S.Ct. 2690, 2696–98, 73 L.Ed.2d 349 (1982) (absolute immunity); *Helstoski v. Meanor*, 442 U.S. 500, 506–08, 99 S.Ct. 2445, 2448–49, 61 L.Ed.2d 30 (1979) (Speech or Debate Clause); *Abney v. United States*, 431 U.S. 651, 660–62, 97 S.Ct. 2034, 2040–41, 52 L.Ed.2d 651 (1977) (double jeopardy)).

8. In their original briefs filed before the filing of the common pleas court's supplemental Rule 1925(a) opinion, both parties did also present extensive arguments concerning GARA's misrepresentation, concealment, and withholding exception. From that opinion, however, it has subsequently become clear that the common pleas court did not resolve the summary judgment motions bases upon this exception, and

Appellees, on the other hand, take the position that the common pleas court's orders meet none of the requirements of the collateral order doctrine. As to separability, they contend that review of the orders would require an appellate court to delve deeply into the merits of the underlying controversy, determining, for example, what component or components (if any) of the accident aircraft caused the crash and whether any such parts were defectively designed. Appellees also place questions concerning the age of the replacement parts among the category of disputed issues.

As to importance, Appellees stress that GARA is not a wholesale vindication of industry interests over those of injured plaintiffs, but rather, represents a careful balancing by Congress of the respective interests involved. *Accord* H.R.Rep. No. 103–525(I), at 1, *reprinted in* 1994, 103rd Cong., 2nd Sess. 1994, U.S.Code Cong. & Admin.News at 1638 (explaining that GARA was intended to "limit excessive product liability costs, while at the same time affording fair treatment to persons injured in general aviation aircraft accidents"). In particular, Appellees argue that the rolling provision serves a critical equalization role by preserving full redress for defects that are not fairly associated with original manufacture. *Accord* H.R.Rep. No. 103–525(I), at 3, *reprinted in* 1994, 103rd Cong., 2nd Sess. 1994, U.S.Code Cong. & Admin.News at 1640 (indicating that the rolling provision supplies an "element of fairness"). Further, Appellees note that, in assessing importance for purposes of the collateral order doctrine, this Court looks for rights deeply rooted in public policy going beyond the litigation at hand, *Geniviva*, 555 Pa. at 599, 725 A.2d at 1214; *Melvin*, 575 Pa. at 272, 836 A.2d at 47, and measures any such interests against the public policy interests advanced by adherence to the final judgment rule. *See Ben*, 556 Pa. at 484, 729 A.2d at 552. In this balance, Appellees vigorously dispute Appellants' proposition that GARA creates a statutory right not to withstand trial, contending that the statute does no more than to create a defense that can be addressed in the

therefore, it is of limited relevance to the question of appealability at this juncture.

same fashion as other defenses in circumstances in which material facts are disputed, namely, by trial. *Cf. Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 873, 114 S.Ct. 1992, 1999, 128 L.Ed.2d 842 (1994) (explaining that, in analyzing the second prong of the collateral order test, the federal courts tend to "view claims of a 'right not to be tried' with skepticism, if not a jaundiced eye." (citation omitted)). Appellees reject Appellant's attempt to equate the GARA interest in freedom from liability in tort with assertions of immunity, Speech or Debate Clause challenges, and double jeopardy claims. Their argument is that the latter concepts protect social costs deeply rooted in the infrastructure of American government and society, whereas GARA represents economic regulation that merely advances the financial interests of general aviation manufacturers.

As to irreparable loss, Appellees contend that Appellants' rights will not be lost if appellate review is postponed, since, again, it is their position that GARA merely creates a defense whereby a plaintiff's claim for damages can be barred if certain factual prerequisites are proved. Appellees also caution that allowing the interlocutory appeals to go forward would sanction repetitive appellate review of defenses and expose the appellate courts to an unduly broad range of challenges based upon other statutes of repose that might also be loosely characterized as embodying a right not to stand trial. Concerning the distinction between summary judgment orders grounded on the presence of a factual question and those dependent on legal determinations made in *Johnson v. Jones*, 515 U.S. at 304, 115 S.Ct. at 2151, Appellees direct our attention to the aspects of the common pleas court's supplemental Rule 1925(a) opinion referencing the presence of disputed facts as a basis for its decision.

■ This Court's review in these consolidated appeals is plenary, since determining the appropriate boundaries of collateral order jurisdiction entails resolution of a question of law. *Accord Commonwealth v. Kennedy*, 583 Pa. 208, 214–15 n. 3, 876 A.2d 939, 943 n. 3 (2005). Having studied the parties' respective arguments, we agree with Appellants that they

should be afforded appellate merits review of the common pleas court's interlocutory orders, as those orders sufficiently meet the elements of the collateral order doctrine.

At the outset, we note that Appellants, for the most part, have focused the substantive challenge that they seek to raise on appeal on the scope of an original manufacturer's ongoing liability under GARA's rolling provision for the alleged failure of replacement parts that it did not physically manufacture.[9] Such limitation disposes of a number of Appellees' contentions, since, contrary to their arguments, there is no need to assess a broad range of merits issues, such as what components (if any) actually caused the accident and whether any such parts were defective. Nor is it necessary to assess the actual age of the replacement parts alleged to have caused the accident for purposes of GARA. In this regard, the question of whether or not the replacement parts were actually installed within a new eighteen-year period implicated by the rolling provision is immaterial if Appellants are correct that no new period arises under the rolling provision in the first instance in relation to entities who are not the actual manufacturers of the relevant replacement components.[10] Appellants' framing of the central

9. As noted, Appellants did also seek to demonstrate that there are no material facts in dispute concerning the application of the misrepresentation, concealment, and withholding exception. Since, however, the common pleas court's supplemental Rule 1925(a) order has revealed that this argument was not a basis for its decision, and because its resolution will entail a fact-based review of affidavits, depositions, and other discovery materials, as opposed to resolution of a central legal controversy, we agree with Appellees' position that it should not be considered in the present appeal. *See Johnson v. Jones*, 515 U.S. at 313–20, 115 S.Ct. at 2156–59.

10. Various aspects of the legal question that Appellants seek to assert on appeal have been addressed and/or touched upon by a number of jurisdictions, as the parties recognize. *See, e.g., Sheesley v. Cessna Aircraft Co.*, No. 02–4185–DES, 2006 DSD 6, *slip op.* at 16–19 (S.D.S.D. Apr. 20, 2006) (rejecting the argument that the holder of a type certificate for an aircraft is always considered the manufacturer of a defective part for purposes of GARA's rolling provision); *Mason v. Schweizer Aircraft Corp.*, 653 N.W.2d 543, 550 (Iowa 2002) (observing that a design-defect strict liability claim against a helicopter manufacturer was "indisputably" based on manufacturer status); *Burroughs.*, 93 Cal.Rptr.2d at 132–34 (adopting a broad definition of the term "manufacturer" under GARA to comport with the federal policy of

question presented therefore is consistent with an appropriate application of the collateral order doctrine under the United States Supreme Court's distinction between summary judgment orders reflecting legal versus factual determinations, *see Johnson v. Jones*, 515 U.S. at 313–20, 115 S.Ct. at 2156–59,[11] as Appellants have plainly sought to present a focused legal challenge on appeal.[12]

With this frame of reference, we proceed to the specific requirements of the collateral order doctrine. As to separability, this Court has adopted a practical analysis recognizing that some potential interrelationship between merits issues and the question sought to be raised in the interlocutory appeal is tolerable. *See Melvin*, 575 Pa. at 270–71, 836 A.2d at 46 (citing *In re Ford Motor Co.*, 110 F.3d 954, 958 (3d Cir.1997)); *accord Johnson v. Jones*, 515 U.S. at 314, 115 S.Ct. at 2157 (explaining that a claim is sufficiently separate from the underlying issues for purposes of collateral order review if it "is conceptually distinct from the merits of plaintiffs claim,"

ameliorating the impact upon the American aviation industry of long-tail liability); *Campbell v. Parker-Hannifin Corp.*, 69 Cal.App.4th 1534, 82 Cal.Rptr.2d 202, 209 (1999) ("[T]he replacement parts provision [of GARA applies] only to the entity that manufactured the replacement part.").

11. While *Johnson v. Jones* is not binding on us in terms of our application of the state collateral order doctrine, the state formulation initially derives from the United States Supreme Court's approach, and we see good reason to adhere to that approach as concerns the legal/factual distinction made in *Johnson v. Jones*. As the United States Supreme Court has explained, the distinction is consistent with the "separateness" element of the collateral order doctrine and serves a rational narrowing function in terms of which issues may be considered as of right on interlocutory appellate review. *See id.* At the same time, it leaves open an avenue for review of a comparatively smaller category of orders where the interests at stake outweigh those underpinning the final order rule.

12. As noted, at various points in its supplemental opinion the common pleas court couched its orders in terms of the finding of material factual disputes. The court's opinion, however, otherwise demonstrates its understanding that Appellants were subject to the rolling provision relative to replacement parts that they did not actually manufacture, and that such understanding was a necessary underpinning to the finding of factual controversies related to the application of the GARA repose scheme. *See Pridgen*, No. 4008, July Term, 2001, *slip op.* at 4, 6–8.

that is, where, even if "practically intertwined with the merits, [it] nonetheless raises a question that is significantly different from the questions underlying plaintiff's claim on the merits" (citations omitted)). We believe that the issue that Appellants seek to raise on appeal concerning the application of the rolling provision to the original manufacturer and type certificate holder is both conceptually and factually distinct from the merits of Appellees' underlying product liability causes of action. Again, to resolve the legal claim presented, an appellate court's frame of reference will be centered on the terms of GARA, not on determinations of fact or the scope of Appellants' liability in the first instance.

■ In terms of importance, we acknowledge Appellees' position that GARA represents a balance among public, industry, and individual interests. Nevertheless, it seems clear under the terms of GARA, as well as from its developed legislative history, that Congress was concerned with exposure of covered aviation manufactures to both liability in damages and associated litigation costs. Appellees certainly raise a legitimate point that GARA's claims relief approach may not be fully on par with immunities and constitutional entitlements addressed in the lines of United States Supreme Court decisions referenced by Appellants. *See supra* note 7. We believe, however, that the federal interests underpinning GARA are sufficiently important to justify the intervention of appellate courts in product liability cases in furtherance of the policy of cost control, where central legal contentions about GARA's scope are legitimately in dispute.

■ Similarly, with regard to the element of irreparable loss, we conclude that the substantial cost that Appellants will incur in defending this complex litigation at a trial on the merits comprises a sufficient loss to support allowing interlocutory appellate review as of right, in light of the clear federal policy to contain such costs in the public interest. Consistent with Appellees' arguments, we realize that future litigants may seek to extend our determination here more broadly to other statutes of repose. Nevertheless, balancing the poten-

tial vindication of the interest in freedom from tort claims created by Congress through GARA against the state interest in curtailing piecemeal appellate review, we find that the former prevails relative to the review of controlling legal issues in the present cases.[13]

We hold, therefore, that the collateral order doctrine applies to the present appeals.[14]

Having disposed of the jurisdictional issue, this case could be remanded to the Superior Court for disposition of the merits issues. However, particularly since the parties have already been subject to several remands, as they already have fully briefed the merits questions, and in light of the interests

**13.** Appellees' concern with repetitive appellate review is ameliorated by the narrowing of the present appeal as of right to central legal issues, and the application of sound jurisprudential principles, such as the law of the case doctrine, in any subsequent appeal. *See generally Commonwealth v. Wallace*, 582 Pa. 234, 239 n. 2, 870 A.2d 838, 841 n. 2 (2005) (explaining that "the law of the case doctrine dictates that 'upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court'" (citation omitted)).

**14.** We are aware of the recent decision in *Robinson v. Hartzell Propeller, Inc.*, 454 F.3d 163 (3d Cir.2006), in which the United States Court of Appeals for the Third Circuit held that a summary judgment order finding material issues of disputed fact in the application of GARA's misrepresentation, concealment and withholding exception did not qualify for interlocutory appellate review as of right under the federal collateral order doctrine. Certain aspects of our decision here reflect a respectful disagreement with the Third Circuit's reasoning, particularly as concerns the weight that our respective courts have attached to the Congressional intent to ameliorate litigation costs (as opposed to merely creating a defense to liability) via a federal statute of repose applicable to the aviation industry. *Compare supra* at 421–23, 905 A.2d at 433, *with Robinson*, 454 F.3d at 173. Significantly, however, our rationale aligns with other aspects of the Third Circuit's dispositive reasoning, as the Court of Appeals expressly rested its holding on the fact that the appeal in *Robinson* did not raise a question of law, but rather, merely represented a challenge the district court's decision that material factual issues were in dispute concerning GARA's misrepresentation, concealment, and withholding exception. *See id.* at 173–74. Here, we have found that the present challenge to the common pleas court's summary judgment orders centers on dispositive legal issues arising from the court's opinion; indeed, the common pleas court has not yet made a determination in this case concerning whether there are material facts in dispute regarding the misrepresentation, concealment, and withholding exception.

at stake, we will proceed to evaluate the common pleas court's decision on the merits. *Cf. Parsowith v. Commonwealth, Dep't of Revenue*, 555 Pa. 200, 208, 723 A.2d 659, 663 (1999) (taking a similar approach in addressing, for the sake of judicial economy, a merits issue that had not been addressed in the intermediate appellate court).

First, the common pleas court ruled that, because Appellants are alleged to have designed, and held the type certificate for, the accident aircraft's engine, GARA's rolling provision may apply, so that Appellants may not be able to claim the benefit of the GARA's general eighteen-year limitation relative to replacement parts specified in the type certificate. *See, e.g., Pridgen*, No. 4008, July Term, 2001, *slip op.* at 6–8. In terms of GARA's express provisions, the common pleas court effectively drew a distinction between liability asserted against a manufacturer "in its capacity as a manufacturer," GARA § 2(a), which would be subject to repose, and liability asserted in a capacity as a designer and/or type certificate holder, which it believed would not. *Accord* Plaintiffs' Memorandum of Law In Support of Their Response In Opposition To Defendant Textron Lycoming's Motion for Summary Judgment at 11 ("Plaintiffs seek recovery from Textron for its negligence in type certificating the accident-engine with the Marvel Schebler carburetor. This claim seeks recovery from Textron in its capacity as the type certificate holder for the decision to type certificate the 0–540–E4B5 engine with the Marvel Schebler MA–4–5 carburetor.").

GARA's legislative history does reflect a sentiment that liability should be retained by manufacturers that proceeds beyond the manufacturing role. For example, a committee report explains:

The ["in its capacity as a manufacturer"] limitation is intended to insure that parties who happen to be manufacturers of an aircraft or a component part are not immunized from liability they may be subject to in some other capacity. For example, in the event a party who happened to be a manufacturer committed some negligent act as a mechanic of an aircraft or as a pilot, and such act was a proximate

cause of an accident, the victims would not be barred from bringing a civil suit for damages against that party in its capacity as a mechanic.

H.R. Rep. 103–525(II), at 7, *reprinted in* 1994, 103rd Cong., 2nd Sess. 1994, U.S.Code Cong. & Admin.News at 1649. Nevertheless, the types of activities noted by the committee, physical repair work and piloting, are far more remote from the manufacturing role than are the statuses of type certificate holder and/or designer.

Indeed, type certification is an essential prerequisite to manufacture in the aviation industry. *See Monroe v. Cessna Aircraft Co.,* 417 F.Supp.2d 824, 833 (E.D.Tex.2006) ("Prior to manufacturing a new aircraft, a manufacturer must receive a 'type certificate' indicating the FAA's approval of a plane's basic design and ensuring that the design complies with all applicable FAA regulations." (citing 49 U.S.C. § 44704(a), and 14 C.F.R. § 21.21)). Since assumption of the duties and responsibilities arising out of this process are essential to manufacturing, claims arising from alleged breaches of such duties and responsibilities logically must be considered to be asserted against the manufacturer "in its capacity as manufacturer" under GARA, and therefore, subject to its repose provisions. Notably, as well, GARA's misrepresentation, concealment, and withholding exception expressly contemplates the duties and obligations arising out of the type certificate, *see* GARA § (2)(b)(1) (prescribing an exception to GARA's statute of repose where "the claimant pleads with specificity the facts necessary to prove, and proves, that the manufacturer *with respect to a type certificate* ... misrepresented to the [FAA], or concealed or withheld from the [FAA], required information that is material and relevant ...." (emphasis added)). For this reason, it seems plain on the face of the enactment that the federal scheme contemplates that manufacturer liabilities that might arise from type certification are subject to GARA's general grant of repose in the first instance.

Concerning GARA's application to design-defect claims, we initially note that the term "manufacturer" is not defined in GARA, and we believe that reasonable disagreement is possi-

ble concerning its intended breadth. *Accord Mason*, 653 N.W.2d at 548 ("We think, in the context of this statute, that the scope of the word 'manufacturer' is uncertain."). Therefore, it is appropriate to consider the underlying Congressional policy and legislative history in construing the statute. *Accord Patterson v. Shumate*, 504 U.S. 753, 761, 112 S.Ct. 2242, 2248, 119 L.Ed.2d 519 (1992) (noting that courts properly may refer to a statute's legislative history to resolve statutory ambiguities); *United States Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455, 113 S.Ct. 2173, 2182, 124 L.Ed.2d 402 (1993) (referencing policy considerations in terms of statutory construction). The legislative history makes it reasonably plain that design-related claims were contemplated as within the scope of GARA's scheme of repose by the proponents of the legislation.[15] Moreover, because design-defect claims have become a predominate form of claims asserted against manufacturers, we also agree with Appellants that drawing a distinction between the manufacturing and design processes for purposes of GARA's claims-relief provisions would substantially undermine the federal scheme that was crafted meaningfully to relieve the aviation industry of the burden of long-tail liability.

For similar reasons, we also disagree with the common pleas court to the extent that it believed that a status as type certificate holder and/or designer is in and of itself sufficient to implicate GARA's rolling provision, even in instances in which defendants do not actually manufacture the relevant

---

**15.** For example, one committee report in the United States House of Representatives indicates as follows:

> In essence, the bill acknowledges that, for those general aviation aircraft and component parts in service beyond the statute of repose, *any design or manufacturing defect* not prevented or identified by the Federal regulatory process by then should, in most instances, have manifested itself. The bill thus makes clear that, once a general aviation aircraft or component part crosses the specified age threshold, and unless one of the specified exceptions applies, the possibility of any act or omission on the part of its manufacturer in its capacity as a manufacturer—including any defect in the aircraft or component part—ceases to be material or admissible in any civil action[.]

H.Rep. No. 103–525(II), at 6, *reprinted in* 1994, 103rd Cong., 2nd Sess. 1994, U.S.Code Cong. & Admin.News at 1648 (emphasis added).

replacement parts. The proponents of the GARA legislation recognized the essential role of preventative maintenance in the aviation industry. *See* H.R.Rep. No. 103–525(II), at 6, *reprinted in* 1994, 103rd Cong., 2nd Sess. 1994, U.S.Code Cong. & Admin.News at 1647 ("Over the lifespan of a general aviation aircraft, almost every major component will be replaced."). Because we believe that the status of type certificate holder and/or designer fall under the umbrella of manufacturer conduct for purposes of GARA, it would wholly undermine the general period of repose if original manufacturers were excepted from claims relief for replacement parts under the rolling provision by virtue of that status alone. *Cf. Campbell,* 82 Cal.Rptr.2d at 209 (holding that the rolling provision applies only to the entity that manufactured the replacement part).

The common pleas court also referenced Section 400 of the Second Restatement of Torts, which indicates that an entity that supplies a product manufactured by another as his own is subject to liability as though it were the manufacturer. *See* Restatement (Second) of Torts § 400 (1965). Under this theory, the court reasoned, regardless of whether or not a claim could be asserted against Appellants for replacement parts in their capacity as manufacturer, the rolling provision operates to preserve any accountability that Appellants may bear for replacement parts of a type that they hold out as their own. *See Pridgen,* No. 4008, July Term, 2001, *slip op.* at 6–8. We do not believe, however, that Section 400 of the Restatement should be interpreted to displace GARA repose by preserving design-defect claims against a manufacturer that are associated with original design and/or type certification merely because the manufacturer maintains a store of replacement parts, at least in the absence of a creditable allegation that the components alleged to have caused injury to the plaintiffs were actually supplied by the defendant/manufacturer and installed within the eighteen year period.[16] Nota-

16. Here, it appears to be undisputed that the replacement parts alleged to have caused the accident were not manufactured by Appellants or supplied by them within the eighteen-year period. *See* Plaintiffs' Mem-

bly, as well, other courts have rejected similar efforts to apply state-law theories in a way that would circumvent GARA. *See, e.g., Mason,* 653 N.W.2d at 550 (rejecting a plaintiff's efforts to avoid GARA by focusing on state-law duties arising out of the sale by a manufacturer of maintenance materials); *cf. Burroughs,* 93 Cal.Rptr.2d at 132 ("GARA cannot be interpreted by reference to state law.").

Additionally, the common pleas court also indicated that there are various factual disputes concerning the application of the rolling provision. Again, we believe that these conclusions were constructed upon the common pleas court's understanding of GARA's terms, which we have undertaken to correct here. Further, as we have also noted, the common pleas court's finding that there are material issues of fact concerning the liability question in the abstract does not address the matter of repose that Appellants sought to present in their summary judgment motions.

For the above reasons, we hold that the common pleas court erred in holding that the rolling provision of GARA exempts Appellees' claims from the general rule affording repose by virtue of Appellants' status as original manufacturer, type certificate holder, and/or designer, with regard to alleged defects associated with replacement parts that they did not manufacture or supply. Further, we hold that Section 400 of the Restatement does not give rise to continuing liability on the part of a defendant/manufacturer over and against GARA,

orandum of Law In Support of Their Response In Opposition To Defendant Textron Lycoming's Motion for Summary Judgment at 5 (acknowledging that Appellants did not manufacture the carburetor installed on the accident aircraft at the time of the crash); *id.* at 21 (same, with respect to the other allegedly defective parts); *id.* at 15 & Exhibits T, U (recognizing that the overhaul in which relevant replacement parts were installed was not undertaken by Appellants, but rather, was accomplished by Mattituck Airbase, Inc.).

It should be noted that Appellants now recognize that a defendant installed the accident carburetor in June 1980. *See* Supplemental Brief for Appellants, at 9–10. Since this predates the August 1, 1999, accident by more than eighteen years, however, their admission concerning this activity would not give rise to continuing liability pursuant to the rolling provision for design-related claims such as are asserted in Appellees' complaint.

with regard to replacement parts that the defendant/manufacturer did not actually supply to the plaintiffs.

Finally, we note that this litigation is complex, and other grounds have been asserted by Appellees in their efforts to avoid summary judgment, including the misrepresentation, concealment, and withholding exception to GARA. We will therefore remand the case to the common pleas court to consider whether there are material facts in dispute relative to such other matters. Certainly, the court is free to permit additional discovery as it has suggested would be appropriate, to the extent that this is consistent with the Rules of Civil Procedure and the governing decisional law.

The order of the Superior Court is reversed, the orders of the common pleas court are vacated, and the matter is remanded to the common pleas court for further proceedings consistent with this opinion.

Jurisdiction is relinquished.

Chief Justice CAPPY, Justices CASTILLE, NEWMAN, EAKIN and BAER join the opinion.

Former Justice NIGRO did not participate in the decision of this case.