J-E01003-23

2023 PA Super 126

| | | |
|---|---|---|
| SHANNON CHILUTTI AND KEITH CHILUTTI, H/W | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | | |
| v. | | |
| UBER TECHNOLOGIES, INC., GEGEN, LLC, RAISER-PA, LLC, RAISER, LLC, SARAH'S CAR CARE, INC. AND MOHAMMED BASHIER | | |
| Appellees | | No. 1023 EDA 2021 |

Appeal from the Order Entered April 26, 2021
In the Court of Common Pleas of Philadelphia County
Civil Division at No: 200900764

BEFORE: BENDER, P.J.E., LAZARUS, J., OLSON, J., STABILE, J., DUBOW, J.,
NICHOLS, J., McLAUGHLIN, J., McCAFFERY, J., and SULLIVAN, J.

DISSENTING OPINION BY STABILE, J.:          **FILED JULY 19, 2023**

While I do not discount the concerns expressed by the Majority regarding Internet contracts, I disagree with the Majority's premise that Appellants' right to a jury trial is "central" to our Court's disposition of this case. Majority Opinion at 1. What is central to this case is whether we have jurisdiction over an appeal from the trial court's collateral order staying the proceedings and compelling arbitration. Because Appellants have not satisfied the third prong of the collateral order doctrine, *i.e.*, that their claim will be irreparably lost if review is postponed, I conclude that this Court lacks jurisdiction and the appeal should be quashed. Therefore, I respectfully dissent.

As the Majority observed, the trial court granted Uber's petition to compel arbitration and stayed the proceedings with respect to the co-Appellees. In its Rule 1925(a) opinion, the trial court did not discuss the parties' arguments regarding the agreement to arbitrate (or lack thereof) or explain its basis for granting the motion to compel arbitration. Rather, the court appropriately limited its discussion to the appealability of a motion to compel arbitration and concluded that its order is "not appealable at this time because the parties have not been forced 'out of court.'" Trial Court Opinion, 6/2/21, at 2 (citing *Maleski v. Mut. Fire, Marine & Inland Ins. Co.*, 633 A.2d 1143, 1145 (Pa. 1993)).

Initially, I note that "[a]n order compelling arbitration and staying court action is not final; rather, it is interlocutory because the parties are not forced 'out of court.'" *Maleski*, 633 A.2d at 1145 (citation omitted). As our Supreme Court stated in *Maleski*, "[T]here is no express statutory authority providing for an appeal from an interlocutory order in a case where arbitration is compelled[.]" *Id.* at 1146 (footnote omitted). *See also Schantz v. Dodgeland*, 830 A.2d 1265, 1266 (Pa. Super. 2003) ("An order directing arbitration, whether statutory or common law, is an interlocutory order and is not immediately appealable. The parties have been forced into, not put out of court. Thus the order is interlocutory[.]") (citations omitted). Appellants nevertheless contend that we have jurisdiction to entertain this appeal as a collateral order pursuant to Pa.R.A.P. 313(b). As this Court has recognized:

Under Pa.R.A.P. 313(b), a collateral order is an order that 1) is separable from and collateral to the main cause of action; 2) involves a right too important to be denied review; and 3) presents a question that, if review is postponed until final judgment in the case, the claim will be irreparably lost.

*In re Bridgeport Fire Litigation*, 51 A.3d 224, 230 n.8 (Pa. Super. 2012)

(citation omitted).[1]

In *Shearer v. Hafer*, 177 A.3d 850 (Pa. 2018), our Supreme Court

reiterated:

[We] construe the collateral order doctrine narrowly, and insist that each one of its three prongs be "clearly present" before collateral appellate review is allowed. *Melvin v. Doe*, 575 Pa. 264, 836 A.2d 42, 47 (2003); *Geniviva v. Frisk*, 555 Pa. 589, 725 A.2d 1209, 1214 (1999). Indeed, "[w]e construe the collateral order doctrine narrowly so as to avoid 'undue corrosion of the final order rule[']". *K.C. v. L.A.*, 633 Pa. 722, 128 A.3d 774, 778 (2015) (quoting *Pridgen v. Parker Hannifin Corp.*, 588 Pa. 405, 905 A.2d 422, 427 (2006)). . . . Moreover, as parties may seek allowance of appeal from an interlocutory order by permission, we have concluded that that discretionary process would be undermined by an overly permissive interpretation of Rule 313. *Geniviva*, 725 A.2d at 1214 n.5.[2] . . . As noted above, the collateral order doctrine permits an appeal as of right from a non-final collateral order if the order satisfies the three requirements set forth in Rule 313(b)—separability, importance, and irreparability.

_____

[1] "The appealability of an order under the Pa.R.A.P. 313 collateral order doctrine presents a question of law, over which our standard of review is de novo and our scope of review is plenary." *Brooks v. Ewing Cole, Inc.*, 259 A.3d 359, 365 (Pa. 2021) (citations omitted).

[2] I note that Appellants did not seek an appeal by permission pursuant to Pa.R.A.P. 312.

*Id.* at 858. All three prongs of the collateral order test must be satisfied for this Court to exercise jurisdiction over an otherwise non-final order. ***Spanier v. Freeh***, 95 A.3d 342, 345 (Pa. Super. 2014).

Here, while the first two prongs of the collateral order doctrine are arguably satisfied, I conclude that the third prong is not. In the event Appellants might not be satisfied with the results of their arbitration, they could seek review of the arbitrator's decision.

In this regard, I recognize that Uber's Terms of Use call for arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C.A., § 1 *et seq.* Nevertheless, as the Court of Appeals for the Third Circuit acknowledged:

> Arbitration is fundamentally a creature of contract. The Supreme Court has stated: "arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." ***AT & T Techs., Inc. v. Communications Workers***, 475 U.S. 643, 648–49, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (citation omitted). The Federal Arbitration Act makes written agreements to arbitrate "valid, irrevocable, and enforceable" on the same terms as other contracts. 9 U.S.C.A. § 2 (West 1970). There must be evidence sufficient to establish the parties' consent to arbitration. As a matter of contract, no party can be forced to arbitrate unless that party has entered into an agreement to do so. That agreement must be express and unequivocal.

***Kaplan v. First Options of Chicago, Inc.***, 19 F.3d 1503, 1512 (3d Cir. 1994), *aff'd*, 514 U.S. 938, 115 S.Ct., 1920, 131 L.Ed.2d (1995) (some citations omitted). "An arbitrator's decision to assert jurisdiction over objection is, however, subject to a much broader and more rigorous judicial review than an arbitral decision on the merits. Because it is a question for the

court to decide, it is subject to *de novo* judicial review." ***Id.*** (internal quotations omitted).

In affirming the Third Circuit's decision, the United States Supreme Court stated, "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable evidence' that they did so." ***First Options of Chicago, Inc. v. Kaplan***, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d (1995) (alterations and citations omitted).

While Uber's Terms of Use call for arbitration pursuant to the FAA, this Court has determined that "the FAA standards of review do not apply to a state trial court's review over an arbitration award created and enforced under the FAA." ***Trombetta v. Raymond James Financial Services, Inc.***, 907

A.2d 550, 569 (Pa. Super. 2006).[3]  Therefore, we look to Pennsylvania's arbitration laws.[4]

---

[3] In **Trombetta**, the Court explained that, "[t]he language of FAA §10 itself substantiates this conclusion.  Section 10 explicitly states: '*the United States court in and for the district where in the award was made . . .*' may vacate an arbitration award when certain circumstances are present."  **Id.**, 907 A.2d at 568-69 (emphasis and ellipses in original).  "We believe this phrase constitutes plain language stating that FAA § 10 *only applies to proceedings in United States district courts*."  **Id.** at 569 (emphasis added).  Because a review of the Complaint filed in this action reveals that Appellants as well as some Appellees are residents of or entities incorporated in Pennsylvania, there is no diversity of citizenship (or federal question) upon which jurisdiction in the district court could be based.

A recent United States Supreme Court decision confirms that review of an arbitral award in this case would be governed by state law.  In **Badgerow v. Walters**, 142 S.Ct. 1310 (2022), the Court held that "Congress has not authorized a federal court to adjudicate a Section 9 or 10 application just because the contractual dispute it presents grew out of arbitrating different claims, turning on different law, that (save for the parties' agreement) could have been brought in federal court."  **Id.** at 1318.  Further, "[t]he statutory plan . . . makes Section 9 and 10 applications conform to the normal—and sensible—judicial division of labor: The applications go to state, rather than federal, courts when they raise claims between non-diverse parties involving state law.  **Id.** at 1321.

[4] I note that Uber's arbitration provisions reference applicability of California law in the event the FAA rules are found not to apply.  If Appellants should attempt to vacate an award of the arbitrator, and if it is determined that California law applies, the court could look to Cal. Code Civ. Proc. § 1286.2(a)(4), which provides for vacating an award in the event "arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."  **See Cable Connection, Inc. v. DIRECTV, Inc.**, 190 P.3d 586, 600 (Ca. 2008) ("The powers of an arbitrator derive from, and are limited by, the agreement to arbitrate.  Awards in excess of those powers may, under section[] 1286.2 and 1286.6 be corrected or vacated by the court") (citations omitted).

As this Court explained in **Sage v. Greenspan**, 765 A.2d 1139 (Pa. Super. 2000), *appeal den'd*, 784 A.2d 119 (Pa. 2001):

> Chapter 73 of the Pennsylvania Judicial Code governs statutory, common law and judicial arbitration. 42 Pa.C.S.A. §§ 7301–7362. Sections 7301–7320 of Subchapter A apply to statutory arbitration proceedings and are known collectively as the Pennsylvania Uniform Arbitration Act ("UAA"). Sections 7341 and 7342 of Subchapter B apply to common law arbitration proceedings. 42 Pa.C.S.A. §§ 7341–7342[.] Whether an arbitration agreement is subject to the UAA (Sections 7301–7320 of Subchapter A) or common law (Sections 7341–7342 of Subchapter B) arbitration principles depends on whether the agreement is in writing and expressly provides for arbitration under the UAA. 42 Pa.C.S.A. § 7302(a)[.] Absent an express statement in the arbitration agreement, or a subsequent agreement by the parties which calls for the application of the UAA statutory provisions in Subchapter A, an agreement to arbitrate is conclusively presumed to be at common law and subject to the provisions of Subchapter B.

*Id.* at 1141 (citations omitted).[5] Because the arbitration provisions in Uber's Terms of Use make no reference to the UAA, the standards of review for common law arbitration should apply in the event of a challenge to an award of the FAA arbitrator.

In **Sage**, we recognized that "[t]he standard of review for a common law arbitration is very limited." *Id.* at 1142. However, as this Court held in

---

[5] Because Appellants' Uber registrations and the accident giving rise to Appellants' claim predated July 1, 2019, the effective date of the Revised Statutory Arbitration Act, 42 Pa.C.S.A. § 7321.1-31, the provisions of that Act are not implicated.

*Civan v. Windemere Farms, Inc.*, 180 A.3d 489 (Pa. Super. 2018), "the narrow standard of review derived from section 7341 is not applicable when reviewing a petition to vacate based upon a claim that the parties do not have a valid agreement to arbitrate." *Id.* at 499. Further, as this Court recognized in *Sage*, the award of an arbitrator "is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award." *Id.* (quoting *Prudential Prop. & Cas. Ins. Co. v. Stein*, 683 A.2d 683, 684 (Pa. Super. 1996)). Because a party cannot be forced to arbitrate absent an agreement to do so, *see First Options, supra*, if a court determines there was no agreement to arbitrate, and that Appellants submitted to arbitration only because they were compelled to do so, I believe the court could properly vacate an award based on either the lack of an agreement to arbitrate or a finding that the resulting award was "unjust, inequitable or unconscionable." Therefore, postponing review until final judgment in this case will not result in irreparable loss of Appellants' claim as it can be reviewed in accordance with the applicable Pennsylvania arbitration statutes. Appellants have failed to demonstrate that postponing review until final judgment in the case will result in irreparable loss of their claim. Therefore, they have not satisfied the third prong of the collateral order test.

In its discussion of the collateral order doctrine, the Majority quotes our Supreme Court's decision in **Commonwealth v. Wells**, 719 A.2d 729 (Pa. 1998), in which the Court recognized that Rule 313 "sets forth a narrow exception to the general rule that only final orders are subject to appellate review." Majority Opinion at 7 (quoting **Wells**, 719 A.2d at 730). After identifying the three prongs, including the third prong, *i.e.*, that "the question presented is such that if review is postponed until final judgment in the case, the claimed right **will be irreparably lost**," **id.** (emphasis added), the Court in **Wells** observed that "[t]his third prong requires that the matter must effectively be unreviewable on appeal from final judgment." **Id.** Quoting **Commonwealth v. Myers**, 322 A.2d 131, 133 (Pa. 1974), the Court in **Wells** also noted that an "order is not immediately appealable if it cannot be said 'that denial of immediate review would render impossible any review whatsoever of [the] individual's claim.'" (quoting **United States v. Ryan**, 402 U.S. 530, 533, 91 S.Ct. 1580, 1582 (1971)).

To demonstrate the nature of irreparable loss that satisfies the third prong of the collateral order test, in **Brooks, supra**, our Supreme Court held that the third prong was satisfied because a defendant's sovereign immunity defense would be irreparably lost. **Id.**, 259 A.3d at 373, 375 ("a sovereign immunity defense is irreparably lost if appellate review of an adverse decision on sovereign immunity is postponed until after final judgment" because "the bell has been rung, and cannot be unrung by a later appeal.") (citations

omitted). The protection is from a lawsuit itself not simply a mere shield from judgment or liability, as Pennsylvania courts have recognized. *Id.* at 372 (citing cases). Because sovereign immunity protects government entities from a lawsuit itself, the Court concluded that a sovereign immunity defense is irreparably lost if appellate review of an adverse decision on sovereign immunity is postponed until after final judgment. *Id.* at 373. Subjecting a governmental entity, which claims it is immune, to the legal process undermines the purposes of sovereign immunity. *Id.*

Unlike **Brooks**, Appellants here cannot demonstrate the irreparable loss of any such right. Appellants' claim essentially concerns the forum in which they will litigate their claim, not the loss of a forum whereby they would be out of court. If they are not pleased with the results of an arbitration, they have avenues open to them, whether based on an assertion that they did not agree to arbitrate, or a contention that "fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award." **Sage, supra**, 765 A.2d at 1142 (citation omitted). In other words, the bell can be "unrung." Although the Majority speaks in terms of legal hurdles facing Appellants should they attempt to seek judicial review of an arbitration award, Majority Opinion at 13, the Majority nevertheless stops short of contending the matter would "effectively be unreviewable," stating instead that the third prong of the test is satisfied "because postponing review until final judgment in this case **may** result in the irreparable loss of

Appellant's claims." **Id.** (emphasis added). I submit that the mere possibility of losing a claim falls short of a claim being "irreparably lost," in light of the Supreme Court's stated insistence "that each one of its three prongs be 'clearly present' before collateral appellate review is allowed." **Shearer**, 177 A.3d at 858 (citation omitted).

Again, the issue before this Court is not whether Appellants are being deprived of a right to a jury trial. The issue is whether this Court has jurisdiction over this appeal from an interlocutory order compelling arbitration. "Because there is no express statutory authority providing for an appeal from an interlocutory order in a case where arbitration is compelled," **Maleski**, 633 A.2d at 1146, and because Appellants cannot satisfy the third prong of the collateral order test, I would quash the appeal.

Judge Olson and Judge Sullivan join the Dissenting Opinion.