**[J-32-2021]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| WANDA BROOKS | : | No. 4 EAP 2021 |
| | : | |
| | : | Appeal from the Order of |
| v. | : | Commonwealth Court entered on |
| | : | July 9, 2020 at No. 912 CD 2018, |
| | : | quashing the Order entered on July |
| EWING COLE, INC., D/B/A EWING COLE | : | 3, 2018 in the Court of Common |
| AND CITY OF PHILADELPHIA AND | : | Pleas, Philadelphia County, Civil |
| FAMILY COURT OF THE COURT OF | : | Division at No. 00680 December |
| COMMON PLEAS OF THE FIRST | : | Term 2016. |
| JUDICIAL DISTRICT COURT | : | |
| | : | ARGUED: May 18, 2021 |
| | : | |
| APPEAL OF: FAMILY COURT OF THE | : | |
| COURT OF COMMON PLEAS OF THE | : | |
| FIRST JUDICIAL DISTRICT | : | |

**OPINION**

**JUSTICE MUNDY**                                        **DECIDED: September 22, 2021**

We granted allowance of appeal to consider whether the Commonwealth Court erred in quashing the notice of appeal filed by the Family Court of the Court of Common Pleas of the First Judicial District (the Family Court) on the basis that the trial court's order was not an appealable collateral order under Pennsylvania Rule of Appellate Procedure 313. Because we conclude the trial court's order denying summary judgment on sovereign immunity grounds is a collateral order, appealable as of right under Rule 313, we reverse the Commonwealth Court and remand to the Commonwealth Court for further proceedings.

# I. FACTUAL AND PROCEDURAL HISTORY

This case arises out of personal injuries Appellee Wanda Brooks allegedly sustained when she walked into an unmarked glass wall while she was attempting to exit the Family Court building in Philadelphia on January 8, 2015. Second Am. Compl., 2/8/17, at 2, ¶ 7. On December 8, 2016, Brooks commenced this action with claims for negligence against Ewing Cole, Inc., the architectural firm that designed and constructed the building; the City of Philadelphia (City), as a lessor of the building; and the Family Court, as a leasee of the building. *Id.* at 1-4, ¶¶ 2-6, 8, 10. Brooks also asserted a claim of professional liability against Ewing Cole. *Id.* at 4-5, ¶¶ 12-13. After the Family Court filed preliminary objections to the complaint, Brooks filed an amended complaint. The Family Court again raised preliminary objections to the amended complaint, arguing it is a Commonwealth entity, not a municipal entity, and it did not design or construct the building. Family Court's Prelim. Objections to Plaintiff's Am. Compl., 2/6/17, at 2, ¶ 5-7 (citing 42 Pa.C.S. §§ 102, 301(4); *Russo v. Allegheny Cty.*, 125 A.3d 113 (Pa. Cmwlth. 2015), *aff'd per curiam*, 150 A.3d 16 (Pa. 2016)). Brooks then filed a second amended complaint on February 8, 2017, rendering moot the Family Court's preliminary objections. *See* Pa.R.C.P. 1028(c)(1).

Relevant to this appeal, the second amended complaint averred that the Family Court "is an entity of the Commonwealth of Pennsylvania . . . and is subject to liability under the real estate exception to sovereign immunity, [42] Pa.C.S.A. § 8522(b)." Second Am. Compl., 2/8/17, at 2, ¶ 4. In its answer to the second amended complaint, the Family Court admitted that it was "a Commonwealth entity." Family Court's Answer to Second Am. Compl. with New Matter and Cross-Claim, 3/10/17, at 2, ¶ 4. The Family Court further asserted in its new matter that the Sovereign Immunity Act, 42 Pa.C.S. §§ 8521-8527, barred Brooks's negligence action against it. *Id.* at 4, ¶ 14.

Following the completion of discovery, the Family Court moved for summary judgment. Relying on *Russo*, the Family Court contended it "is subject to sovereign immunity and is immune from tort claims." Mot. for Summ. J., 4/5/18, at ¶ 17. The Family Court explained that Section 8522 of the Sovereign Immunity Act provides that "'acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages'" in enumerated circumstances. *Id.* at ¶ 10 (quoting 42 Pa.C.S. § 8522(b)). The Family Court, however, argued that Section 8522 was inapplicable as it was not a "Commonwealth party" based on *Russo*, in which the Commonwealth Court determined that "'the courts of the unified judicial system are not 'Commonwealth parties' within the meaning of the Sovereign Immunity Act.'" *Id.* at ¶ 13 (quoting *Russo*, 125 A.3d at 118 (holding "the courts of the unified judicial system retain their sovereign immunity as related to tort claims")). Accordingly, the Family Court argued it was entitled to judgment as a matter of law. *Id.* at ¶ 18. In response, Brooks contended that summary judgment was improper because courts are Commonwealth entities, entitled to sovereign immunity and also subject to the waivers of sovereign immunity listed in Section 8522(b). Answer to Mot. for Summ. J., 4/25/18, at ¶ 11. Brooks asserted that the real estate exception to sovereign immunity in Section 8522(b)(4) applied in this case. *Id.* at ¶¶ 21-23. The real estate exception, in context of Section 8522, provides:

### § 8522. Exceptions to sovereign immunity

**(a) Liability imposed.**—The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury

were caused by a person not having available the defense of sovereign immunity.

**(b) Acts which may impose liability.—**The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

. . .

**(4) Commonwealth real estate, highways and sidewalks.—**A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5)[, relating to potholes and other dangerous conditions of highways].

42 Pa.C.S. § 8522(a), (b)(4).

On June 4, 2018, the trial court denied the Family Court's motion for summary judgment. Trial Ct. Order, 6/4/18. On June 28, 2018, the Family Court filed a motion for reconsideration, requesting that the trial court amend its June 4, 2018 order to include a statement specified in 42 Pa.C.S. § 702(b), which would permit the Family Court to take an interlocutory appeal. Mot. for Recons., 6/28/18, at 3. That same day, the Family Court filed a notice of appeal to the Commonwealth Court pursuant to Pa.R.A.P. 313, which provides that collateral orders are appealable as of right. Notice of Appeal, 6/28/18. On July 2, 2018, the trial court vacated its June 4, 2018 order pending reconsideration. Trial Ct. Order, 7/2/18. On July 3, 2018, the trial court entered an order denying summary judgment and further denying the Family Court's request to certify the case for an interlocutory appeal. Trial Ct. Order, 7/3/18.

On July 5, 2018, the Family Court filed a second notice of appeal to the Commonwealth Court pursuant to Rule 313. Notice of Appeal, 7/5/18. On July 9, 2018,

the Commonwealth Court issued an order staying the trial court proceedings pending appeal and directing the trial court to issue an opinion in support of its June 4, 2018 and July 3, 2018 orders denying summary judgment and reconsideration. Cmwlth. Ct. Order, 7/9/18. Thereafter, on August 28, 2018, Brooks discontinued her case against Ewing Cole, and the parties agreed that the cross-claims against Ewing Cole, asserted by the City and the Family Court, were outstanding and unaffected by the partial discontinuance. Consent & Stipulation to Discontinue per Rule 229(b)(1), 8/28/18.

Revising its position on appealability, the trial court stated in its November 5, 2018 Pa.R.A.P. 1925(a) opinion that it now considered its July 3, 2018 order denying summary judgment immediately appealable pursuant to Pa.R.A.P. 1312(a)(2). Trial Ct. Op., 11/5/18, at 2 n.2. The trial court explained that it had previously denied the Family Court's request to certify the matter for an interlocutory appeal because at that time Brooks had outstanding claims against Ewing Cole and the City. *Id.* However, because Brooks had subsequently discontinued her claims against Ewing Cole, and because the City's defense was that it was immune as a landlord out of possession, the trial court opined that the Family Court's sovereign immunity defense "'involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the Order may materially advance the ultimate termination of the matter.'" *Id.* (quoting Pa.R.A.P. 1312(a)(2)). Based on this analysis, the trial court concluded "review now is legally appropriate, [and] it is no longer necessary at this stage to address the appealability of this [c]ourt's [o]rder denying summary judgment." *Id.* The trial court did not opine on the issue of whether its order denying summary judgment was a collateral order pursuant to Pa.R.A.P. 313.

On the merits of the Family Court's sovereign immunity defense, the trial court stated it denied summary judgment because it concluded the General Assembly intended

to include Commonwealth courts in the definition of "Commonwealth party" for purposes of the Sovereign Immunity Act. *Id.* at 8-9. The trial court explained that the Act waived governmental immunity in nine specific areas in actions against "Commonwealth parties," and the Act defined a "Commonwealth party" as "'[a] Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment.'" *Id.* at 3 (quoting 42 Pa.C.S. § 8501). The trial court noted that the Act does not specify that immunity is waived for certain branches of government but not others. *Id.* The trial court disagreed with the *Russo* Court's holding that Commonwealth courts are excluded from the Act because the Judicial Code's definition of "Commonwealth agency" does not include courts. *Id.* at 6 (citing 42 Pa.C.S. § 102; *Russo*, 125 A.3d at 118-19). Instead, the trial court reasoned that "[i]t would be surprising for the General Assembly to create a special exemption allowing for the judicial branch of government to enjoy a higher level of immunity than the General Assembly provided to itself and the executive branch without any explicit language or legislative history of such intention." *Id.* at 8. Accordingly, the trial court concluded a trial was necessary on the issue of whether the glass wall was a dangerous condition under the real estate exception to sovereign immunity. *Id.* at 9.

The Commonwealth Court consolidated the Family Court's notice of appeal of the June 4, 2018 trial court order and its notice of appeal of the July 3, 2018 order. In a unanimous unpublished memorandum decision, a panel of the Commonwealth Court struck the Family Court's first notice of appeal, explaining it was inoperative following the trial court's reconsideration of its June 4, 2018 order, and further quashed the Family Court's appeal of the July 3, 2018 order because it was not a collateral order. *Brooks v. Ewing Cole*, Nos. 911 & 912 C.D. 2018, 2020 WL 3866647, at *1, n.1 (Pa. Cmwlth. Jul. 9, 2020). The Commonwealth Court observed that generally orders denying summary

judgment are not appealable as of right because they are not final orders. *Id.* at *4. Further, the court noted that although the trial court's opinion contained the operative language from Pa.R.A.P. 1312(a)(2), it had not amended its July 3, 2018 order to allow the Family Court to file a petition for permission to file an interlocutory appeal pursuant to Rule 1311. *Id.* at *2, n.5. Therefore, the Commonwealth Court proceeded to analyze whether the Family Court properly asserted a right to appeal under the collateral order doctrine set forth in Pa.R.A.P. 313, which gives appellate courts jurisdiction to consider collateral orders prior to final judgment. *See* Pa.R.A.P. 313; *Commonwealth v. Kennedy*, 876 A.2d 939, 943 (Pa. 2005). Rule 313 provides:

### Rule 313. Collateral Orders

> **(a) General rule.** An appeal may be taken as of right from a collateral order of a trial court or other government unit.
>
> **(b) Definition.** A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313.

The Commonwealth Court recognized that Rule 313 contains three criteria that an order must satisfy to meet the definition of a collateral order: separability, importance, and irreparable loss. *Brooks*, 2020 WL 3866647, at *4. The court found the July 3, 2018 order met the first two of those requirements. *Id.* at *5-7. To decide whether an order is separable and collateral to the main cause of action, the Commonwealth Court observed the question is whether review of the order involves the merits of the underlying cause of action. *Id.* at *5. Further, it recognized that this Court "'has adopted a practical analysis recognizing that some potential interrelationship between merits issues and the question sought to be raised in the interlocutory appeal is tolerable.'" *Id.* (quoting *Pridgen v. Parker*

*Hannifin Corp.*, 905 A.2d 422, 433 (Pa. 2006)). Here, the order was separable from the underlying negligence action, according to the Commonwealth Court, because the issue of whether the Family Court was a "Commonwealth party" under the Sovereign Immunity Act is able to be resolved independent of a consideration of the negligence claim. *Id.* Thus, the sovereign immunity issue was "separable and distinct" from the negligence action, in the Commonwealth Court's view, because it "centers on the terms of the Sovereign Immunity Act and does not necessitate a factual inquiry into the extent of the Family Court's liability." *Id.* at *6.

Next, the Commonwealth Court noted the inquiry into the importance of the right involves weighing the interests that immediate appellate review protects against the interest of efficiency in avoiding piecemeal litigation represented by the final judgment rule. *Id.* An important interest under Rule 313 will typically "'involve rights deeply rooted in public policy going beyond the particular litigation at hand.'" *Id.* (quoting *Geniviva v. Frisk*, 725 A.2d 1209, 1214 (Pa. 1999)). Applying this standard, the Commonwealth Court concluded the right involved, sovereign immunity, "implicates public policy concerns that extend beyond the parties to the instant litigation, as its resolution will dictate whether a member of the general public may maintain a negligence action against the courts." *Id.* at *7.

Although it found the order satisfied the first two prongs of the collateral order doctrine, the Commonwealth Court concluded the order did not meet the third prong because the Family Court's claim to sovereign immunity would not be irreparably lost if appellate review was postponed until final judgment. *Id.* To define irreparable loss, the Commonwealth Court explained its precedent dictates "'a claim will be 'irreparably lost' if review is postponed only if it can be shown the issue involved will not be able to be raised on appeal, if appeal is delayed.'" *Id.* (quoting *Brophy v. Phila. Gas Works & Phila.*

*Facilities Mgmt. Corp.*, 921 A.2d 80, 87 (Pa. Cmwlth. 2007)). Because the Family Court retained the ability to seek appellate review of its claim after final judgment, the Commonwealth Court held its sovereign immunity defense would not be irreparably lost. *Id.* The Commonwealth Court bolstered its conclusion by observing that this Court's precedent requires it to narrowly construe the collateral order doctrine to yield to the final order doctrine. *Id.* at *8 (relying on *Shearer v. Hafer*, 177 A.3d 850, 858 (Pa. 2018)). Accordingly, the Commonwealth Court concluded it lacked jurisdiction to address the Family Court's appeal because the July 3, 2018 order was not a collateral order appealable as of right under Rule 313, and it consequently quashed the appeal. *Id.*

## II. ISSUE AND STANDARD OF REVIEW

This Court granted the Family Court's petition for allowance of appeal to address the following issue:

> Should this Court review the Commonwealth Court's conclusion that an order denying a summary judgment motion based on sovereign immunity does not satisfy the collateral order doctrine of Pennsylvania Rules of Appellate Procedure 313, which conflicts with statutory law and case law that this immunity is "immunity from suit" and presents a matter of first impression for this Court on a substantial legal and policy issue involving absolute immunities?

*Brooks v. Ewing Cole, Inc.*, 243 A.3d 970 (Pa. 2021) (per curiam).

The appealability of an order under the Pa.R.A.P. 313 collateral order doctrine presents a question of law, over which our standard of review is de novo and our scope of review is plenary. *Shearer*, 177 A.3d at 855; *see also Pa. Mfrs. Ass'n Ins. Co. v. Johnson Matthey, Inc.*, 188 A.3d 396, 398 (Pa. 2018) (recognizing de novo standard of review and plenary scope of review over jurisdictional issue).

## III. SOVEREIGN IMMUNITY AND THE COLLATERAL ORDER DOCTRINE

## A. PARTIES' ARGUMENTS

The Family Court argues that this Court should reverse the Commonwealth Court because an order denying summary judgment on the issue of sovereign immunity is a collateral order. The Family Court highlights that sovereign immunity is an absolute immunity, in that it is a complete defense to a cause of action even if a plaintiff can otherwise prove the elements of the underlying cause of action. Family Court's Brief at 10, 13 (citing *Stackhouse v. Pa. State Police*, 892 A.2d 54, 62 (Pa. Cmwlth. 2006) (recognizing sovereign immunity is absolute)). Further, the Family Court emphasizes the statutory scope of sovereign immunity protects government officials and entities "'from suit,'" not merely from judgment or damages. *Id.* at 9-10 (quoting 1 Pa.C.S. § 2310).

Due to the nature of the sovereign immunity defense, the Family Court contends that a decision denying the defense to a governmental entity qualifies as a collateral order under Rule 313's three criteria. First, the Family Court agrees with the Commonwealth Court that the immunity issue is separable from and collateral to the main cause of action because the defense applies regardless of whether the plaintiff establishes the elements of negligence. *Id.* at 12-13. Second, the Family Court also concurs with the Commonwealth Court that the sovereign immunity issue is too important to be denied review because it applies to all branches of government and dictates the circumstances in which government entities must defend their actions, which also implicates the expenditure of the public fisc. *Id.* at 13-14.

Turning to the third prong, which is at the core of this appeal, the Family Court criticizes the Commonwealth Court for construing the irreparable loss requirement too narrowly. *Id.* at 14. The protection from suit that sovereign immunity confers, according to the Family Court, "is irreparably lost if public officials and entities have to engage in

litigation, including discovery and trial" before they can obtain appellate review of an adverse decision on the question of sovereign immunity. *Id.* at 11. Because the scope of the immunity is from all aspects of a lawsuit, the Family Court argues the Commonwealth Court erred in concluding the issue of sovereign immunity is not irreparably lost because it can be raised on appeal following final judgment. *Id.* at 15. In contrast to the Commonwealth Court's framing of the issue, the Family Court asserts "[t]he proper question is not whether the defense can be raised after trial, however. It is whether absolute sovereign immunity's protections – the protection of immunity from suit – are irreparably lost if the Commonwealth and its officials are forced to go through discovery, trial, and judgment." *Id.* Explaining that the purpose of sovereign immunity is to protect "'government policymaking prerogatives'" and "'the public fisc,'" the Family Court contends the Commonwealth Court's holding forces governmental entities and officials to engage in discovery, prepare for trial, and try a case, which requires the government to expend the public fisc even though it may ultimately be immune. *Id.* at 15-16 (quoting *Sci. Games Int'l, Inc. v. Commonwealth*, 66 A.3d 740, 755 (Pa. 2013)). Thus, the Family Court's position is that the protections of sovereign immunity are irreparably lost when a governmental entity is precluded from invoking the defense and cannot obtain appellate review until after final judgment. *Id.* at 15.

In support of its position, the Family Court analogizes this case to *Pridgen*, in which this Court permitted an interlocutory appeal as of right under Rule 313 because the defendant would suffer an irreparable loss if it had to incur a "'substantial cost'" in defending complex litigation when it asserted an immunity defense under the federal General Aviation Revitalization Act of 1994. *Id.* at 16 (quoting *Pridgen*, 905 A.2d at 433). The Family Court argues the rationale in *Pridgen* applies to its appeal because forcing it to defend this lawsuit without immediate appellate review of the denial of its sovereign

immunity defense would both irreparably injure the public fisc and additionally expose governmental entities to defending their actions in litigation and undermine the public interest in the unfettered discharge of governmental obligations.[1]  *Id.* at 17.  Similarly, the Family Court notes that in *Yorty v. PJM Interconnection, L.L.C.*, 79 A.3d 655 (Pa. Super. 2013), the Superior Court, relying on *Pridgen*, held that an immunity defense under the Federal Energy Regulatory Commission met Rule 313 because the defendant would undergo an irreparable loss in defending the negligence action.  *Id.* (discussing *Yorty*, 79 A.3d at 662).  Further, the Family Court points out that the Superior Court has held that a statute of repose defense represents "'immunity from suit, not just immunity from liability,'" and the costs in defending the litigation would be irreparably lost if appellate review was not permitted before final judgment.[2]  *Id.* at 17-18 (quoting *Osborne v. Lewis*, 59 A.3d 1109, 1111 (Pa. Super. 2012)).  Based on this precedent, the Family Court maintains a sovereign immunity defense "is vitiated once an official or entity has to defend their actions in a suit."  *Id.* at 17.

The Family Court questions the Commonwealth Court's omission of *Pridgen* and *Yorty* from its discussion of the irreparable loss requirement, despite the court's reliance

---

[1] Amici Curiae, County Commissioners Association of Pennsylvania, the Pennsylvania State Association of Township Supervisors, and the Pennsylvania Municipal League, agree that *Pridgen* controls the outcome of this case because it concluded that the cost of defending a lawsuit at trial constitutes an irreparable loss.  Amici Brief at 11 (discussing *Pridgen*, 905 A.3d at 433).

[2] Amicus Curiae, the General Assembly of the Commonwealth of Pennsylvania, faults the Commonwealth Court for failing to recognize that absolute immunity is a protection from suit, not only from liability.  Amicus Brief at 26.  The General Assembly points out that this Court, in the context of the absolute immunity of legislative speech or debate, has explained that immunity from suit is the protection from defending a case at trial, which would be irreparably lost if review is postponed until final judgment.  *Id.* (relying on *Consumer Party of Pa. v. Commonwealth*, 507 A.2d 323, 331 (Pa. 1986), *abrogated on other grounds*, *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 877 A.2d 383 (Pa. 2005)).

on those cases in discussing the first two prongs of Rule 313. *Id.* at 18. The Family Court also notes the Commonwealth Court did not discuss its previous cases holding that the "'purpose of absolute immunity is to foreclose the possibility of suit.'" *Id.* at 19 (quoting *Osiris Enters. v. Borough of Whitehall*, 877 A.2d 560, 566 (Pa. Cmwlth. 2005) (discussing high public official immunity)); *see also id.* (citing *Guarrasi v. Scott*, 25 A.3d 394, 405 n.11 (Pa. Cmwlth. 2011) (stating "judicial immunity is not only immunity from damages, but also immunity from suit"); *Stackhouse*, 892 A.2d at 62 (explaining "[t]he purpose of absolute sovereign immunity [is] to insulate state agencies and employees not only from judgments but also from being required to expend the time and funds necessary to defend suits")). Further, the Family Court criticizes the cases the Commonwealth Court included in its analysis of irreparable loss as distinguishable. *Id.* at 19. For instance, the Family Court contends that in *Sylvan Heights Realty Partners, L.L.C. v. LaGrotta*, 940 A.2d 585 (Pa. Cmwlth. 2008), the court addressed the irreparable loss requirement in dicta only, after holding the issue of legislative immunity was not separate and collateral based on the facts of the case. Family Court's Brief at 19-20 (citing *Sylvan Heights*, 940 A.2d at 588-89, and noting this Court has held that legislative immunity includes immunity from defending litigation, *see Consumer Party of Pa. v. Commonwealth*, 507 A.2d 323, 331 (Pa. 1986), *abrogated on other grounds*, *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 877 A.2d 383 (Pa. 2005)). The Family Court distinguishes the other cases upon which the Commonwealth Court relied because those cases did not involve Rule 313's irreparable loss requirement. *Id.* at 20-21 (citing *Aubrey v. Precision Airmotive LLC*, 7 A.3d 256, 262 (Pa. Super. 2010) (omitting discussion of irreparable loss); *Bollinger v. Obrecht*, 552 A.2d 359, 363 n.5 (Pa. Cmwlth. 1989) (declining to address irreparable loss); *Gwiszcz v. City of Phila.*, 550 A.2d 880, 882 (Pa. Cmwlth. 1988) (holding the issue was not separable and not discussing irreparable loss)).

In additional support of its position, the Family Court discusses a number of United States Supreme Court cases stating the federal rule is to permit immediate appeal of an adverse decision on immunity from suit. *Id.* at 21-24. As the Family Court notes, the rule in federal court is that "'the denial of a substantial claim of absolute immunity is an order appealable before final judgment, for the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action.'" *Id.* at 22 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (holding the denial of a claim of qualified immunity is immediately appealable)); *see also id.* at 21 (citing *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (stating a qualified immunity defense is "effectively lost if a case is erroneously permitted to go to trial")); *id.* at 22 (citing *Plumhoff v. Rickard*, 572 U.S. 765, 772 (2014) (holding that qualified immunity "cannot be effectively reviewed on appeal from a final judgment because by that time the immunity from standing trial will have been irreparably lost")). The Family Court indicates that the Supreme Court has stated the purpose of absolute immunity is to alleviate public officials' "'fear of consequences,'" in the form of not only monetary damages but also "'the general costs of subjecting officials to the risks of trial – distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service.'" *Id.* at 21 (quoting *Mitchell*, 472 U.S. at 526). The Family Court finds the federal court model persuasive because the note to Rule 313 indicates that it is a "codification of existing case law" and cites to *Pugar v. Greco*, 394 A.2d 542 (Pa. 1978), in which this Court relied on federal case law concerning appealable interlocutory orders.[3] *Id.* at 23-

---

[3] The Governor and Attorney General of Pennsylvania, in a joint amicus curiae brief, agree that Rule 313 was a codification of the United States Supreme Court's collateral order rule, and they contend we should follow the Supreme Court's jurisprudence holding that a government defendant claiming immunity is entitled to an immediate appeal of a pretrial decision denying its immunity defense. Joint Amicus Brief at 8 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009)). They further argue that sovereign immunity's protection

24 (noting the *Pugar* Court cited *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). Lastly, the Family Court notes that many other states have concluded that immunity from suit is irreparably lost if the issue is not immediately appealable. *Id.* at 24 n.11 (collecting cases).

In contrast, Brooks argues that this Court should affirm the Commonwealth Court's decision that the order denying summary judgment was not a collateral order. Brooks's Brief at 17. Brooks contends that the Family Court's delay in seeking resolution of its sovereign immunity defense until summary judgment, when it could have filed preliminary objections or a motion for judgment on the pleadings, shows that the immunity defense is not a "'substantial legal and policy issue'" warranting a departure from the final judgment rule. *Id.* at 6-7 (quoting *Brooks*, 243 A.3d at 970 (granting allocatur), and citing *Renner v. Court of Common Pleas*, 234 A.3d 411, 417 (Pa. 2020) (reviewing an order sustaining preliminary objections on the basis of sovereign immunity and separation of powers but resolving the case based on separation of powers); *Sutton v. Bickell*, 220 A.3d 1027, 1035 (affirming order sustaining preliminary objections on sovereign immunity grounds); *Cagey v. Commonwealth*, 179 A.3d 458, 468 (Pa. 2018) (reversing order granting motion for judgment on the pleadings on sovereign immunity grounds)).

Additionally, in assessing the importance of the right the Family Court asserts, Brooks contends that her interest in having her case resolved expeditiously instead of through piecemeal litigation surpasses the Family Court's interests. *Id.* at 9. She argues that the Family Court will not lose anything because the issue of sovereign immunity can be reexamined after the jury renders its verdict, and if the jury returns a defense verdict, the issue is moot. *Id.* Recognizing that sovereign immunity is absolute immunity, Brooks

from litigation is lost if the government cannot immediately appeal an adverse decision on its sovereign immunity defense. *Id.* at 10.

asserts that the Commonwealth Court's decision to deny the Family Court's interlocutory appeal is not fatal to its claim of sovereign immunity. *Id.* at 12. Brooks maintains that this Court has narrowly construed the collateral order doctrine and posits that we "can expect the floodgate of sovereign immunity appeals to open wide" if we deem that sovereign immunity satisfies Rule 313. *Id.* at 9-10 (discussing *Rae v. Pa. Funeral Dirs. Ass'n*, 977 A.2d 1121, 1126 (Pa. 2009) (explaining that we narrowly construe the collateral order doctrine because "[p]arties may seek allowance of appeal from an interlocutory order by permission, and we have concluded that discretionary process would be undermined by an overly permissive interpretation of Rule 313's limited grant to collateral appeals as of right.")).

Brooks claims the Family Court's interest in obtaining an immediate appeal is solely pecuniary but notes that the Family Court did not incur any expenses defending this lawsuit because its trial attorney acted as counsel for both the Family Court and the Co-defendant City. *Id.* at 13. Further, Brooks dismisses the concerns that sovereign immunity protects public officials because she did not sue any public officials in this case. *Id.* For these reasons, Brooks contends that this case is an inappropriate vehicle to hold that sovereign immunity satisfies the collateral order doctrine. *Id.* at 15. Because sovereign immunity is an absolute defense that is not waivable, Brooks argues "[a]n immunity defense does not, in and of itself, entitle a litigant to appellate review of an interlocutory order." *Id.* at 15-16 (citing *In re Upset Sale of Props.*, 560 A.2d 1388, 1389 (Pa. 1989)).

## B. ANALYSIS

We granted review to determine whether an order denying summary judgment based on a sovereign immunity defense is a collateral order, appealable as of right under Rule 313, which, as previously noted, provides:

### Rule 313. Collateral Orders

**(a) General rule.** An appeal may be taken as of right from a collateral order of a trial court or other government unit.

**(b) Definition.** A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313.

Rule 313 codified the three-part collateral order doctrine first formulated by the United States Supreme Court in *Cohen*, as an exception to the final order rule in cases where lower courts' decisions do not terminate the case, yet "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen*, 337 U.S. at 546; *see also Shearer*, 177 A.3d at 855-58 (tracing the evolution of the collateral order doctrine in Pennsylvania). Pennsylvania followed the reasoning of *Cohen* in *Bell v. Beneficial Consumer Discount Co.*, 348 A.2d 734 (Pa. 1975), which recognized that "a finding of finality must be the result of a practical rather than a technical construction" and concluded that "orders denying class action status possess sufficiently practical aspects of finality to make them appealable." *Bell*, 348 A.2d 735-36. This Court followed its decision in *Bell* by expressly adopting the three-part *Cohen* formulation of the collateral order doctrine:

an order is considered final and appealable if (1) it is separable from and collateral to the main cause of action; (2)

the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost.

*Pugar*, 394 A.2d at 545. In 1992, the *Pugar* Court's articulation of the collateral order doctrine was codified in Rule 313. *Compare id.*, *with* Pa.R.A.P. 313. "[W]here an order satisfies Rule 313's three-pronged test, an appellate court may exercise jurisdiction even though the order is not final. If the test is not met, however, and in the absence of another exception to the final order rule, there is no jurisdiction to consider an appeal of such an order." *Shearer*, 177 A.3d at 857. Due to the jurisdictional nature of the collateral order doctrine, this Court has concluded it may raise it *sua sponte. Dougherty v. Heller*, 138 A.3d 611, 627 n.9 (Pa. 2016) (per curiam).

Because Pennsylvania adopted the collateral order doctrine from the United States Supreme Court, we continue to look to that Court's decisions for guidance in defining the contours of Rule 313. *Rae*, 977 A.2d at 1128. However, this Court has not remained in lockstep with the United States Supreme Court's recently imposed limitations on the collateral order doctrine in attorney-client privilege cases grounded in the High Court's determination that privilege claims are not irreparably lost as they are reviewable after a final judgment. *Shearer*, 177 A.3d at 857 (describing this Court's departure from *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108-09 (2009)). Instead, we have explained that our jurisprudence recognizes a privilege would be irreparably lost upon the disclosure of allegedly privileged material, and thus, a privilege claim is an immediately appealable collateral order. *Id.* (discussing *Commonwealth v. Harris*, 32 A.3d 243, 249 (Pa. 2011) ("[o]nce putatively privileged material is in the open, the bell has been rung, and cannot be unrung by a later appeal."). "In sum, then, while our Court has diverged from the federal approach in some regards, we nonetheless construe the collateral order doctrine narrowly, and insist that each one of its three prongs be 'clearly present' before collateral

appellate review is allowed." *Id.* at 858 (recognizing a narrow construction of the collateral order rule reinforces the final order doctrine and preserves interlocutory appeals by permission under Pa.R.A.P. 312).

Additionally, as this appeal requires us to determine whether a decision denying the government's sovereign immunity defense meets the collateral order doctrine, we next examine the general principles of sovereign immunity. Sovereign immunity is enshrined in Article 1, section 11 of the Pennsylvania Constitution, which provides, in relevant part, that "[s]uits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct." PA. CONST. art. 1, § 11. The General Assembly has declared its intent "that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa.C.S. § 2310. The Sovereign Immunity Act, 42 Pa.C.S. §§ 8501-8564, contains the legislative waiver of the sovereign immunity of the Commonwealth, local governments, and public officials in certain enumerated circumstances. 42 Pa.C.S. § 8522 (listing ten exceptions to Commonwealth parties' sovereign immunity); 42 Pa.C.S. § 8542 (specifying nine exceptions to local agencies' immunity); 42 Pa.C.S. § 8545-46 (defining the scope of official immunity).

This Court has characterized the constitutional protection of sovereign immunity as "fundamental."[4] *Frazier v. Workers' Comp. Appeal Bd. (Bayada Nurses, Inc.)*, 52 A.3d 241, 247 (Pa. 2012); *see also Bell Tel. Co. of Pa. v. Lewis*, 169 A. 571, 571 (stating "[t]hat

---

[4] In *Mayle v. Pennsylvania Department of Highways*, 388 A.2d 709 (Pa. 1978), this Court abolished sovereign immunity. However, the General Assembly promptly enacted 1 Pa.C.S. § 2310, which "unequivocally reaffirmed the absoluteness of sovereign and official immunity under Article 1, Section 11, except as provided by statute." *Bayada Nurses*, 52 A.3d at 247 n.9.

the state may not be sued without its consent is fundamental."). Sovereign immunity is an absolute defense that is not waivable. *Upset Sale of Props.*, 560 A.2d at 1389; *McShea v. City of Phila.*, 995 A.2d 334, 341 (Pa. 2010) ("Tort immunity is a non-waivable, absolute defense."). Further, this Court has held that courts must strictly construe the legislatively specified exceptions to sovereign immunity. *Snyder v. Harmon*, 562 A.2d 307, 311 (Pa. 1989); *see also Kiley v. City of Phila.*, 645 A.2d 184, 185-86 (Pa. 1994). "The constitutionally-grounded, statutory doctrine of sovereign immunity obviously serves to protect government policymaking prerogatives and the public fisc." *Sci. Games Int'l*, 66 A.3d at 755; *see also McShea*, 995 A.2d at 341 (stating the "clear intent" is "to insulate the government from exposure to tort liability").

Against this background, we must decide whether an adverse decision on the government's assertion of sovereign immunity constitutes a collateral order, immediately appealable as of right under Rule 313. To do so, we must determine whether the order denying the Family Court's motion for summary judgment on its sovereign immunity defense satisfies each prong of Rule 313. *See Shearer*, 177 A.3d at 855 (explaining that this Court independently evaluates the collateral order doctrine due to its jurisdictional nature). As set forth above, an order is collateral under Rule 313 if: (1) the order is separable from the underlying cause of action; (2) it involves a right too important to be denied review; and (3) it presents an issue that will be irreparably lost if appellate review is postponed until after final judgment. Pa.R.A.P. 313(b).

Regarding the first prong, "an order is separable from the main cause of action if 'it can be resolved without an analysis of the merits of the underlying dispute' and if it is 'entirely distinct from the underlying issue in the case.'" *Shearer*, 177 A.3d at 858 (quoting *Commonwealth v. Blystone*, 119 A.3d 306, 312 (Pa. 2015)). "[T]his Court has adopted a practical [separability] analysis recognizing that some potential interrelationship between

merits issues and the question sought to be raised in the interlocutory appeal is tolerable." *Pridgen*, 905 A.2d at 433. We agree with the Commonwealth Court that in this case, the trial court order denying summary judgment is separable from Brooks's underlying negligence action. The issue that the Family Court sought to raise on appeal was whether it was a "Commonwealth party" subject to the Sovereign Immunity Act's waiver of immunity. *Brooks*, 2020 WL 386647, at *6. This issue is a purely legal question that can be resolved by focusing on the Act and does not necessitate an examination of the merits of Brooks's negligence claim. *Accord id.*; Trial Ct. Op. at 8 (stating "[t]he only dispute is a question of law"). It does not require a court to find any facts regarding the Family Court's alleged negligence nor does it require a court to determine the scope of the Family Court's potential liability. In fact, sovereign immunity would provide the Family Court with an absolute defense to Brooks's claims, regardless of whether Brooks is able to prove negligence. Further, neither Brooks nor the Family Court presently dispute this aspect of the Commonwealth Court's decision. Accordingly, we conclude the order meets Rule 313's separability requirement.

Turning to the second prong, this Court has examined the importance of the right involved by weighing the interests that immediate appellate review would protect against the final judgment rule's interests in efficiency through avoiding piecemeal litigation. *Ben v. Schwartz*, 729 A.2d 547, 552 (Pa. 1999); *see also Shearer*, 177 A.3d at 858-59; *Blystone*, 119 A.3d at 312. Further, we require that "the order involves rights deeply rooted in public policy going beyond the particular litigation at hand" because "it is not sufficient that the issue is important to the particular parties involved." *Commonwealth v. Williams*, 86 A.3d 771, 782 (Pa. 2014). We agree with the Commonwealth Court that the right to a sovereign immunity defense is too important to evade review before final judgment. As noted above, the protection of sovereign immunity is deeply rooted in public

policy, as it is both secured by the Constitution and has been preserved by the legislature. *See* PA. CONST. art. 1, § 11; 1 Pa.C.S. § 2310. Additionally, the implications of the Family Court's ability to invoke sovereign immunity are wide-ranging, extending beyond this particular case. The protection of sovereign immunity extends to each of our three branches of government. *See* General Assembly's Amicus Brief at 9 (explaining that the issue in this case impacts all types of absolute immunity). Moreover, the resolution of the scope of sovereign immunity also has implications for other individuals' ability to sue the Commonwealth's courts by invoking an exception to immunity in Section 8522(b) of the Sovereign Immunity Act. These deeply rooted and far-reaching implications outweigh the final judgment rule's efficiency interests. Therefore, we conclude the right involved meets Rule 313's importance requirement.

Regarding Rule 313's third prong, we must inquire into whether the Family Court's claim of sovereign immunity will be irreparably lost if appellate review is postponed until final judgment. Pa.R.A.P. 313; *see also Ben*, 729 A.2d at 552. As provided by both the Constitution and statute, sovereign immunity is the protection from suit. PA. CONST. art. 1, § 11 (declaring "suits" against the Commonwealth must be legislatively authorized); 1 Pa.C.S. § 2310 (stating that the Commonwealth and its officials "remain immune from suit" unless waived). Thus, the protection is from a lawsuit itself not simply a mere shield from judgment or liability, as Pennsylvania courts have recognized. *See McShea*, 995 A.2d at 341 (stating sovereign immunity "insulate[s] the government from exposure to tort liability"); *Montgomery v. City of Phila.*, 140 A.2d 100, 103 (Pa. 1958) ("absolute immunity is designed to protect the official from the suit itself, from the expense, publicity, and danger of defending the good faith of his public actions before a jury."); *Commonwealth v. Berks Cty.*, 72 A.2d 129, 130 (Pa. 1950) (recognizing "a State may not be sued without its consent"); *Stackhouse*, 892 A.2d at 62 (explaining sovereign immunity's purpose is to

protect state agencies and employees "not only from judgments but also from being required to expend the time and funds necessary to defend suits"); *accord Mitchell*, 472 U.S. at 526 (stating qualified public official immunity "is an *immunity from suit* rather than a mere defense to liability") (emphasis in original).

Because sovereign immunity protects government entities from a lawsuit itself, we conclude that a sovereign immunity defense is irreparably lost if appellate review of an adverse decision on sovereign immunity is postponed until after final judgment. Subjecting a governmental entity, which claims it is immune, to the legal process undermines the purposes of sovereign immunity. *See Sci. Games Int'l*, 66 A.3d at 755; *Mullin v. Commonwealth, Dep't of Transp.*, 870 A.2d 773, 779 (Pa. 2005) (stating the purpose of immunity is to protect government revenues from "unnecessary depletion"); *Montgomery*, 140 A.2d at 104 ("the purpose of absolute immunity is to foreclose the possibility of suit"). Engaging in litigation requires a governmental entity to expend taxpayer dollars on its defense and to divert employees' time from conducting government business. Further, forcing governmental entities to litigate claims from which they may be immune has a chilling effect on government policymaking. *See Sci. Games Int'l*, 66 A.3d at 755; *see also Dorsey v. Redman*, 96 A.3d 332, 343, 345 (Pa. 2014) (stating "[t]he underlying purpose [of official immunity] is to allow those in governmental policy making positions to have the ability to act without fear of litigation and unlimited damages" and concluding official immunity is immunity from suit not merely liability). These protections of sovereign immunity are irreparably lost if a governmental entity must litigate a case to final judgment before it can obtain appellate review of an adverse ruling on its invocation of sovereign immunity.

The conclusion that the protections of immunity are irreparably lost when a party goes to trial is supported by this Court's decision in *Pridgen*. In *Pridgen*, this Court

concluded that an order denying summary judgment based on the defendant's statute of repose defense pursuant to the federal General Aviation Revitalization Act of 1994 was a collateral order appealable as of right under Rule 313. *Pridgen*, 905 A.2d at 424, 434. After finding the order met the first two prongs of Rule 313, the *Pridgen* Court concluded it also satisfied the irreparable loss requirement because "the substantial cost that Appellants will incur in defending this complex litigation at a trial on the merits comprises a sufficient loss to support allowing interlocutory appellate review as of right, in light of the clear federal policy to contain such costs in the public interest." *Id.* at 433. This is consistent with our conclusion in this case that the depletion of the public fisc and employee resources represent an irreparable loss, particularly when the policies underlying sovereign immunity are intended to preserve the government's revenue, time, and policymaking prerogatives.

Further, our decision is consistent with United States Supreme Court jurisprudence holding that orders denying immunity defenses are immediately appealable collateral orders. The Supreme Court has concluded that orders denying immunity are reviewable collateral orders because "[t]he entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell*, 472 U.S. at 526 (emphasis in original) (discussing qualified public official immunity). The Court has explained that "such orders conclusively determine whether the defendant is entitled to immunity from suit; this immunity issue is both important and completely separate from the merits of the action, and this question could not be effectively reviewed on appeal from a final judgment because by that time the immunity from standing trial will have been irretrievably lost." *Plumhoff*, 572 U.S. at 772 (concluding qualified immunity generally falls within the collateral order doctrine). It has been the Supreme Court's consistent view that "immunity

ordinarily should be decided by the court long before trial." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (discussing qualified immunity); *see also, e.g.*, *Pearson*, 555 U.S. at 231-32 (declaring that a qualified immunity defense is "effectively lost if a case is erroneously permitted to go to trial."); *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (holding "[s]tates and state entities that claim to be 'arms of the State' may take advantage of the collateral order doctrine to appeal a district court order denying a claim of Eleventh Amendment immunity."); *Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982) (stating "orders denying claims of absolute immunity are appealable under the *Cohen* criteria" in analyzing absolute presidential immunity). The Third Circuit Court of Appeals has followed this precedent and held that "the denial of a defense of sovereign immunity is immediately appealable under the collateral order doctrine." *Bell Atl.-Pa., Inc. v. Pa. Pub. Util. Comm'n*, 273 F.3d 337, 343 (3d Cir. 2001); *see also Fowler-Nash v. Democratic Caucus of Pa. House of Representatives*, 469 F.3d 328, 330 n.1 (3d Cir. 2006) (asserting its jurisdiction to review an order denying absolute immunity pursuant to the collateral order doctrine); *In re Montgomery Cty.*, 215 F.3d 367, 373 (3d Cir. 2000) (holding it had interlocutory jurisdiction to review an implied denial of qualified immunity claims).

Further, we are not persuaded by Brooks's arguments that the order denying summary judgment does not satisfy the collateral order doctrine. Regarding Brooks's attacks on the Family Court's litigation strategy of waiting until summary judgment to seek to have the suit dismissed, we note that the case-specific litigation strategy does not alter the legal issue of whether an adverse decision on sovereign immunity, at any stage of litigation, is immediately appealable under Rule 313.[5] Likewise, we reject Brooks's

---

[5] Pennsylvania Rule of Civil Procedure 1030 dictates that "immunity from suit" must be raised as an affirmative defense and pled in a new matter. Pa.R.C.P. 1030(a). Nonetheless, some intermediate appellate court decisions have concluded that immunity

suggestion that this case is not an appropriate vehicle to decide this issue because the Family Court did not incur any expenses in defending this case, as the interests sovereign immunity protects are not entirely pecuniary and this case presents an adequate opportunity to decide the question of law presented. We acknowledge Brooks's concern that our decision may open "the floodgate of sovereign immunity appeals," and we recognize the potential applicability of our decision here to other forms of absolute immunity. Brooks's Brief at 10; *see also* General Assembly's Amicus Brief at 9 (asserting this case affects all types of immunity). Notwithstanding, we have concluded that the claim involved in this case meets Rule 313's collateral order doctrine, and we note that our courts are well-suited to address purely legal issues such as this one.

We also disagree with the Commonwealth Court's reasoning that an appeal following final judgment will adequately protect the Family Court's claim of sovereign immunity. The Commonwealth Court's decision undermines the purposes of sovereign immunity and transforms it from a protection from suit into a mere shield against damages. This is against the express intention of the legislature as stated in 1 Pa.C.S. § 2310. While it is accurate that the issue of immunity may be reviewed after final judgment, by that time the government's monetary resources and employees' time will have been subject to unnecessary depletion. Further, subjecting the government to unnecessary litigation has potentially deleterious effects on its policymaking decisions. Once the government litigates a case to final judgment, "the bell has been rung, and cannot be unrung by a later appeal." *Harris*, 32 A.3d at 249. Immediate appellate review of the

---

may be raised in preliminary objections. *See, e.g., R.H.S. v. Allegheny Cty. Dep't of Human Servs.*, 936 A.2d 1218, 1228 (Pa. Cmwlth. 2007); *Wurth by Wurth v. City of Phila.*, 584 A.2d 403, 407 (Pa. Cmwlth. 1990). However, "[t]his Court has not expressly stated whether sovereign immunity may be raised in a demurrer," and that issue is not before us in this case. *Sutton*, 220 A.3d at 1035 n.4 (Pa. 2019) (affirming a Commonwealth Court order sustaining preliminary objections based on sovereign immunity).

adverse decision on sovereign immunity under Rule 313 is the only means by which the Family Court may vindicate its rights in this case. Accordingly, we reverse the order of the Commonwealth Court and remand to the Commonwealth Court for further proceedings consistent with this opinion.

Commonwealth Court decision reversed. Case remanded. Jurisdiction relinquished.

Chief Justice Baer and Justices Saylor, Todd, Donohue and Wecht join the opinion.

Justice Dougherty did not participate in the consideration or decision of this matter.