**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| SHANNON CHILUTTI AND KEITH CHILUTTI, H/W | : | No. 58 EAP 2024 |
| | : | |
| | : | Appeal from the Judgment of |
| | : | Superior Court entered on July 19, |
| v. | : | 2023, at No. 1023 EDA 2021 |
| | : | reversing and remanding the Order |
| | : | of the Philadelphia County Court of |
| UBER TECHNOLOGIES, INC., GEGEN | : | Common Pleas at No. 200900764, |
| LLC, RAISER-PA, LLC, RAISER, LLC, | : | entered on April 26, 2021. |
| SARAH'S CAR CARE, INC., MOHAMMED | : | |
| BASHEIR | : | ARGUED: September 9, 2025 |
| | : | |
| | : | |
| APPEAL OF: UBER TECHNOLOGIES, | : | |
| INC., GEGEN LLC, RAISER-PA, LLC, | : | |
| RAISER, LLC | : | |

**OPINION**

**JUSTICE BROBSON**                                           **DECIDED: January 21, 2026**

We granted allowance of appeal in this matter to consider whether the Superior Court properly determined that a trial court order granting a petition to compel arbitration of ongoing litigation constitutes an immediately appealable collateral order. If the Court concludes that the Superior Court correctly characterized that order as a collateral order, then we also must examine whether the trial court erred by granting the petition to compel arbitration. After careful review, we hold that the trial court's order does not qualify as a collateral order. We, therefore, do not reach the second question. Instead, we vacate the Superior Court's judgment and remand the case to that court with instructions to quash the appeal.

# I. BACKGROUND

In September of 2020, Shannon Chilutti (Shannon) and her husband, Keith Chilutti (Keith) (collectively, the Chiluttis), filed a complaint in the Court of Common Pleas of Philadelphia County (trial court). The complaint named several defendants, including Uber Technologies, Inc. (Uber). In their complaint, the Chiluttis presented multiple claims, including a claim of negligence against Uber, and made the following relevant allegations.

On March 20, 2019, Keith accompanied Shannon, who is wheelchair bound, to a medical appointment. After that appointment, Keith used an Uber application on his smartphone to request a wheelchair-accessible vehicle (WAV) to transport the Chiluttis to their home. Mohammed Basheir (Basheir) responded to this request. Basheir placed Shannon in the rear of his WAV and secured her with pre-positioned retractable hooks. Although Shannon asked for a seatbelt, Basheir did not provide her with one. En route to the Chiluttis' home, Basheir made an aggressive turn, causing Shannon to fall out of her wheelchair. Keith witnessed Shannon strike her head and lose consciousness as a result of that fall.

In response to the Chiluttis' complaint, Uber filed a petition to compel arbitration, arguing that, when the Chiluttis enrolled in Uber, they agreed to arbitrate the claims that they presented in their complaint. Uber contended that the Chiluttis ignored this agreement and, instead, chose to pursue litigation in court. On April 26, 2021, the trial court entered an order granting the petition and staying court proceedings pending the result of arbitration. The Chiluttis filed a notice of appeal. In their brief to the Superior Court, the Chiluttis took the position that the trial court's April 26th order constitutes an immediately appealable collateral order pursuant to Pennsylvania Rule of Appellate Procedure 313 and that the trial court erred by granting Uber's petition to compel

arbitration.[1]  As to the latter argument, the Chiluttis maintained that the parties did not have a valid agreement to arbitrate, as the alleged agreement was insufficient to waive their constitutional rights to a trial by jury.  *See Chilutti v. Uber Techs., Inc.*, 300 A.3d 430, 439 (Pa. Super. 2023) (en banc) ("[The Chiluttis] next argue that the trial court erred in compelling them to arbitrate their claims against Uber . . . because no valid agreement to arbitrate exists between the parties.").

A divided *en banc* panel of the Superior Court reversed and remanded in a published opinion.  *Id.*  The Superior Court first addressed the appealability of the trial court's order.  In so doing, the Superior Court recognized that, in *Maleski v. Mutual Fire, Marine & Inland Insurance Company*, 633 A.2d 1143 (Pa. 1993), this Court held that an order compelling arbitration is not a final appealable order, observing that "there is no . . . statutory authority in existence that allows a party to take an appeal from an order that compels arbitration."  *Maleski*, 633 A.2d at 1145-46. The Superior Court, however, emphasized that the *Maleski* Court "did not discuss appealability as a collateral order pursuant to [Pennsylvania Rule of Appellate Procedure] 313."  *Chilutti*, 300 A.3d at 437.  The Superior Court then considered the Chiluttis' argument that the trial court's order qualifies as a collateral order.

---

[1] Pennsylvania Rule of Appellate Procedure 313 provides:

> **(a) General Rule.**  An appeal may be taken as of right from a collateral order of a trial court or other government unit.

> **(b) Definition.**  A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313.

"Preliminarily," the Superior Court explained, "the arbitration agreement in this case is a matter of common law."[2]  *Id.*  The Superior Court then reported that, to qualify as a collateral order pursuant to Pennsylvania Rule of Appellate Procedure 313(b), the trial court's order had to:  (1) be separable from and collateral to the main cause of action; (2) involve a right that is too important to be denied review; and (3) present a question such that, if review is postponed until final judgment in the case, the appealing party's claim will be irreparably lost.  The Superior Court stated that it was "evident" that the trial court's order met the first and second prongs of this standard.  *Id.* at 437 n.10.

Regarding the third prong, relying on its decision in *Sage v. Greenspan*, 765 A.2d 1139 (Pa. Super. 2000), the Superior Court opined that a party challenging a common law arbitration award in court "must first demonstrate that a fraud, misconduct, corruption or other irregularity occurred, before establishing that those malfeasances caused an unjust, inequitable or unconscionable arbitration award."[3]  *Id.* at 438 (footnote omitted).  "Notably," the Superior Court submitted, "in a situation like here, an arbitrator's enforcement of an arbitration provision when the arbitration provision either failed to meet basic contract principles or violated a party's constitutional right to a jury trial cannot be considered a malfeasance; rather, it is an incorrect legal conclusion."  *Id.*  Based upon

---

[2] The parties do not dispute that their alleged arbitration agreement calls for common law arbitration.  Common law arbitration is governed by Subchapter B of Chapter 73 of the Judicial Code, 42 Pa. C.S. §§ 7341-7342.

[3] This standard derives from Section 7341 of the Judicial Code, 42 Pa. C.S. § 7341. Section 7341 is entitled "Common law arbitration" and provides:

> The award of an arbitrator in a nonjudicial arbitration which is not subject to Subchapter A (relating to statutory arbitration), A.1 (relating to revised statutory arbitration) or a similar statute regulating nonjudicial arbitration proceedings is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.

42 Pa. C.S. § 7341.

this conclusion, the court suggested that a "plaintiff cannot challenge the legality of the arbitration provision because the arbitrator's interpretation of the legality of the arbitration is not the result of fraud, misconduct, corruption[,] or other irregularity. Rather, it is a misinterpretation of legal principles." *Id.*

According to the Superior Court, "the second part of the test—that those malfeasances caused an unjust, inequitable or unconscionable arbitration award—is also problematic." *Id.* The court explained:

> The logical fallacy is that if a court determines there was no agreement to arbitrate, and that a party submitted to arbitration only because they were compelled to do so, the court could vacate an award based on a finding that the award was unjust, inequitable or unconscionable—and thus, the party would not irreparably lose their claim. However, there is always the possibility that a court may find a subsequent arbitration award was fair—meaning it was not unjust, inequitable, or unconscionable—even if there was no agreement to arbitrate between the parties; resultingly, the award would remain binding on the parties. In that scenario, a party would be denied their constitutional right to a jury trial, and accordingly, "forced out of court." *See Maleski*, *supra*. We find it should be clear that a party must be provided every opportunity for a court to review the merits of the claims rather than jumping over these extremely high hurdles to seek judicial review of an arbitration award.

*Id.* at 438-39 (emphasis omitted).

The Superior Court concluded "that the third requirement for an appealable collateral order is satisfied because postponing review until final judgment in the case *may* result in the irreparable loss of [the Chiluttis'] claims." *Id.* at 439 (emphasis added). The Superior Court, therefore, determined that it had jurisdiction to entertain the merits of the Chiluttis' substantive claim. The Superior Court ultimately held that the parties did not have a valid arbitration agreement and that the trial court, therefore, erred by granting Uber's petition to compel arbitration.

Judge Stabile penned a dissent, which Judges Olsen and Sullivan joined. Unlike the majority, the dissent did not believe that the trial court's order qualifies as a collateral

order. Highlighting, *inter alia*, that the collateral order doctrine must be construed narrowly, the dissent maintained that, "[i]n the event [that the Chiluttis] might not be satisfied with the results of their arbitration, they could seek review of the arbitrator's decision." *Id.* at 453 (Stabile, J., dissenting). In support, the dissent acknowledged the "very limited" standard of review regarding common law arbitration that the Superior Court applied in *Sage*. *Id.* at 454. "However," the dissent emphasized, "as this [c]ourt held in *Civan v. Windermere Farms*, *Inc.*, 180 A.3d 489 (Pa. Super. 2018), 'the narrow standard of review derived from [Section 7341 of the Judicial Code] is not applicable when reviewing a petition to vacate based upon a claim that the parties do not have a valid agreement to arbitrate.'" *Id.* (quoting *Civan*, 180 A.3d at 499).

The dissent added that, "[b]ecause a party cannot be forced to arbitrate absent an agreement to do so, if a court determines there was no agreement to arbitrate, and that [the Chiluttis] submitted to arbitration only because they were compelled to do so, . . . the court could properly vacate an award based on either the lack of an agreement to arbitrate or a finding that the resulting award was 'unjust, inequitable or unconscionable.'" *Id.* at 454-55 (citation omitted). "Therefore," the dissent opined, "postponing review until final judgment in this case will not result in irreparable loss of [the Chiluttis'] claim as it can be reviewed in accordance with the applicable Pennsylvania arbitration statutes." *Id.* at 455. For these reasons, the dissent would have quashed the Chiluttis' appeal.

## II. ISSUES

This Court granted Uber's petition for allowance of appeal to consider the following issues, as phrased by Uber:

(1) Does the Superior Court's new special-notice rule for enforcing online arbitration agreements violate the [Federal Arbitration Act],[4] as interpreted and applied by the Supreme Court of the United States?

---

[4] 9 U.S.C. §§ 1-402.

(2) As a matter of Pennsylvania law, should online arbitration agreements be enforced under the same rules applicable to contracts generally?

(3) Does the Superior Court lack appellate jurisdiction to immediately review interlocutory orders staying litigation pending arbitration?

*Chilutti v. Uber Techs., Inc.*, 325 A.3d 446, 446-47 (Pa. 2024) (per curiam) (first alteration in original).

## III. ANALYSIS

Because the resolution of Uber's third issue disposes of this matter, we address only that issue.[5]  Generally speaking, Pennsylvania's appellate courts have jurisdiction to entertain appeals from the final orders of trial courts.  Pa.R.A.P. 341(a).  Typically, a final order disposes of all claims and all parties.  Pa.R.A.P. 341(b)(1).  "The final order rule reflects the long-held limitation on review by both federal and [S]tate appellate courts. Considering issues only after a final order maintains distinctions between trial and appellate review, respects the traditional role of the trial judge, and promotes formality, completeness, and efficiency."  *Shearer v. Hafer*, 177 A.3d 850, 855 (Pa. 2018).  Here, the trial court's order indisputably was not final, as it merely granted Uber's petition to compel arbitration and stayed further court proceedings until the completion of arbitration. In other words, the order did not dispose of all claims or all parties.

Pennsylvania Rule of Appellate Procedure 313 provides an exception to the final order rule.  Rule 313 allows parties to appeal as of right from interlocutory collateral orders.  Pa.R.A.P. 313(a).  The definition of a collateral order contains three prongs.  To qualify as a collateral order:  "(1) the order must be separable from, and collateral to, the main cause of action; (2) the right involved must be too important to be denied review; and (3) the question presented must be such that if review is postponed until after final judgment, the claim will be irreparably lost."  *Commonwealth v. Harris*, 32 A.3d 243, 248

---

[5] Whether the trial court's order constitutes a collateral order presents a question of law; consequently, our standard of review is *de novo*, and our scope of review is plenary. *J.C.D. v. A.L.R.*, 303 A.3d 425, 429 (Pa. 2023).

(Pa. 2011) (citing Pa.R.A.P. 313(b)). The collateral order doctrine is to be narrowly construed, and each of the three prongs of the standard must be clearly present. *J.C.D.*, 303 A.3d at 430.

The focus of this appeal is on the third prong of the collateral order standard, *i.e.*, irreparability. "To satisfy the irreparability prong, 'the matter must effectively be unreviewable on appeal from final judgment.'" *Id.* at 431 (quoting *Commonwealth v. Wells*, 719 A.2d 729, 730 (Pa. 1998)). We agree with Uber that the Superior Court erred by concluding that the trial court order in question meets the third prong of the collateral order doctrine.[6]

As an initial matter, the Superior Court did not conclude that the propriety of the order granting Uber's petition to compel arbitration will be effectively unreviewable on appeal after the trial court enters a final judgment. Instead, the Superior Court determined "that the third requirement for an appealable collateral order is satisfied because postponing review until final judgment in the case *may* result in the irreparable loss of [the Chiluttis'] claims." *Chilutti*, 300 A.3d at 439 (emphasis added). In reaching this conclusion, the Superior Court relied on the "very limited" standard of review regarding common law arbitration, which is captured in Section 7341 of the Judicial Code.[7] *See supra* at 4 n.3 (quoting 42 Pa. C.S. § 7341).

---

[6] The following entities filed *amicus* briefs in support of Uber: The Chamber of Commerce of the United States of America and the Pennsylvania Chamber of Business and Industry; Pennsylvania Coalition for Civil Justice Reform, Pennsylvania Institute of Certified Public Accountants, Pennsylvania Manufacturers' Association, Marcellus Shale Coalition, and DFT, Inc.; Match Group, Inc.; Philadelphia Association of Defense Counsel; and Lyft, Inc.

[7] To the extent that our disposition of this appeal requires us to interpret the Judicial Code, we note that the task of interpreting a statute is guided by the Statutory Construction Act of 1972, 1 Pa. C.S. §§ 1501-1991 (Statutory Construction Act). The Statutory Construction Act provides that the "object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa. C.S. § 1921(a). "When the words of a statute are clear and free from all ambiguity, the letter (continued…)

As Uber points out, the General Assembly unambiguously aimed Section 7341 of the Judicial Code's limited standard of review solely at the "award of the arbitrator in a nonjudicial arbitration." *See* 42 Pa. C.S. § 7341 ("*The award of an arbitrator in a nonjudicial arbitration* . . . is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.") (emphasis added). In other words, pursuant to the plain language of Section 7341, the limited standard of review for common law arbitration applies to arbitrators' awards, not to trial courts' decisions or orders. Of further note, Section 7342(a) of the Judicial Code provides that specific sections of the Revised Statutory Arbitration Act, 42 Pa. C.S. §§ 7321.1-.31, apply to common law arbitration, including Sections 7321.8 and 7321.29. 42 Pa. C.S. § 7342(a).

Section 7321.8 of the Revised Statutory Arbitration Act provides, in pertinent part:

> **(a) Refusal to arbitrate under agreement.--**On motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate under the agreement:
>
> > (1) if the refusing party does not appear or does not oppose the motion, the court shall order the parties to arbitrate; and
> >
> > (2) if the refusing party opposes the motion, the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate.

---

of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b). "As a general rule, the best indication of legislative intent is the plain language of a statute." *Malt Beverages Distribs. Ass'n v. Pennsylvania Liquor Control Bd.*, 974 A.2d 1144, 1149 (Pa. 2009).

42 Pa. C.S. § 7321.8. Section 7321.29(a)(6) of the Revised Statutory Arbitration Act provides that an appeal may be taken from, *inter alia*, "a final judgment entered under this subchapter."[8] 42 Pa. C.S. § 7321.29(a)(6).

Here, in response to the Chiluttis' complaint, Uber filed a petition to compel arbitration, contending, *inter alia*, that Uber and the Chiluttis have an arbitration agreement. Uber further averred that the Chiluttis ignored that agreement and, instead, pursued an action in the trial court. The trial court granted the petition, *stayed* the trial court proceeding, and ordered the parties to arbitrate. If the Chiluttis are later aggrieved by the final judgment that the trial court enters after the matter is returned to that court following arbitration, then the Chiluttis can appeal that judgment to the Superior Court. In that appeal, the Chiluttis also can challenge, among other things, the trial court's April 26, 2021 order that is the subject of this appeal. *See*, *e.g.*, *Betz v. Pneumo Abex, LLC*, 44 A.3d 27, 54 (Pa. 2012) (stating that "an appeal of a final order subsumes challenges to previous interlocutory decisions"). Whether the trial court erred by granting Uber's petition to compel arbitration presents a question of law. Consequently, should the Chiluttis appeal from the trial court's final judgment and challenge the trial court's order compelling arbitration, the Superior Court's standard of review would be *de novo*, not the standard for judicial review of an arbitration award. *See*, *e.g.*, *Santiago v. Philly Trampoline Park, LLC*, 343 A.3d 995, 1003 (Pa. 2025) (explaining that enforceability of arbitration agreement presents question of law, "over which our standard of review is de novo and the scope of review is plenary").

---

[8] Section 7321.24(a)(5) of the Revised Statutory Arbitration Act allows a party to arbitration proceedings to ask the trial court to vacate an arbitration award if, *inter alia*, "there was no agreement to arbitrate." 42 Pa. C.S. § 7321.24(a)(5). That statutory procedure, however, is not available in common law arbitration proceedings because Section 7321.24 is not listed in Section 7342(a) as a provision of the Revised Statutory Arbitration Act that is applicable to common law arbitration.

In an attempt to avoid this result, the Chiluttis rely on this Court's decision in *Pridgen v. Parker Hannifin Corporation*, 905 A.2d 422 (Pa. 2006), for the proposition that a party's potential "substantial loss" of money in litigating a claim is sufficient to meet the third prong of the collateral order doctrine.[9]  They submit that, because they may incur a substantial loss of money in litigating this action in arbitration, the trial court's order compelling arbitration meets the requirements of the third prong of the collateral order doctrine.  We disagree.

*Pridgen* involved:  (1) complex litigation that followed a fatal aviation accident; and (2) a federal statute, the General Aviation Revitalization Act of 1994 (GARA),[10] which Congress enacted to contain the costs of aviation-related litigation.  Relevant to this appeal, the defendants in *Pridgen* filed motions for summary judgment, claiming that they were immune from suit under GARA.  The trial court denied the motions.  The defendants appealed to the Superior Court, which quashed the appeals on the basis that the trial court's orders were interlocutory and did not constitute collateral orders.  This Court granted allowance of appeal and held, in relevant part, that the orders denying the defendants' motions for summary judgment qualified as collateral orders.

As to the third prong of the collateral order doctrine, this Court opined:

> [W]ith regard to the element of irreparable loss, we conclude that the substantial cost that [the defendants] will incur in defending this complex litigation at a trial on the merits comprises a sufficient loss to support allowing interlocutory appellate review as of right, in light of the clear federal policy [expressed in GARA] to contain such costs in the public interest. Consistent with [the plaintiffs'] arguments, we realize that future litigants

---

[9] The following person and entities filed *amicus* briefs in favor of the Chiluttis:  Brett Frischmann; National Association of Consumer Advocates, National Consumer Law Center, Public Justice, Community Legal Services, Legal Aid of Southeastern Pennsylvania, Neighborhood Legal Services, Summit Legal Aid, Pennsylvania Legal Aid Network, and Philadelphia Legal Assistance; American Association for Justice and Pennsylvania Association for Justice; and Community Justice Project, Justice at Work, National Employment Law Project, and Philadelphia Council AFL-CIO.

[10] Pub.L. No. 103-298, 108 Stat. 1552, codified as amended at 49 U.S.C. § 40101.

may seek to extend our determination here more broadly to other statutes of repose. Nevertheless, balancing the potential vindication of the interest in freedom from tort claims created by Congress through GARA against the state interest in curtailing piecemeal appellate review, we find that the former prevails relative to the review of controlling legal issues in the present cases.

*Pridgen*, 905 A.2d at 433 (footnote omitted).

Unlike *Pridgen*, this case does not involve costly complex litigation or a federal statute that expresses a legislative policy to contain litigation costs in specific cases. In addition, this matter does not have anything to do with a claim of immunity from suit. As Justice Wecht has wisely pointed out:

> This Court has focused on the cost of litigation [in assessing the third prong of the collateral order doctrine] on at least one occasion, but that ruling was premised upon federal law supporting a clear policy of cost containment in aviation litigation. . . . If expenditure of resources when such expenditure could be avoided through an interlocutory appeal sufficed for [Pennsylvania Rule of Appellate Procedure] 313 purposes, then every interlocutory order presumably would satisfy the irreparable loss prong of the collateral order rule. The exception would devour the rule.

*J.C.D.*, 303 A.3d at 442-43 (Wecht, J., concurring). *Pridgen* simply is inapplicable to this matter.

## IV. CONCLUSION

We hold that the trial court's order granting Uber's petition to compel arbitration and staying court proceedings does not qualify as a collateral order. The Superior Court erred in holding to the contrary and, therefore, lacked jurisdiction to entertain the merits of the Chiluttis' substantive claim regarding the parties' alleged lack of a valid arbitration agreement. Consequently, we vacate the Superior Court's judgment and remand the matter to that court with instructions to quash the Chiluttis' appeal.

Chief Justice Todd and Justices Donohue, Dougherty, Wecht and Mundy join the opinion.

Justice McCaffery did not participate in the consideration or decision of this matter.