2026 PA Super 102

| | | |
|---|---|---|
| TYRONE DIXON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| HERITAGE VALLEY SEWICKLEY | : | |
| | : | |
| Appellant | : | No. 307 WDA 2025 |

Appeal from the Order Entered September 23, 2024
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD-20-009605

BEFORE:  OLSON, J., STABILE, J., and KING, J.

DISSENTING OPINION BY OLSON, J.:          **FILED: May 28, 2026**

I believe we are constrained to quash this appeal.  Therefore, I respectfully dissent from the learned Majority's determination in this matter.

As the Majority ably notes, on June 21, 2024, Heritage Valley Sewickley ("Appellant") filed a motion for judgment on the pleadings, where it claimed that the action filed by Tyrone Dixon ("Plaintiff") was barred by the two-year statute of limitations.  Appellant's Motion for Judgment on the Pleadings, 6/21/24, at 1-5.  The trial court denied Appellant's motion by order entered on September 23, 2024.  *See* Trial Court Order, 9/23/24, at 1.

In response, on October 17, 2024, Appellant filed an application requesting that the trial court amend its interlocutory, September 23, 2024 order, to allow for an interlocutory appeal by permission.  *See* 42 Pa.C.S.A. § 702(b).  The trial court denied Appellant's application on November 20, 2024.  Trial Court Order, 11/20/24, at 1.

On December 13, 2024, Appellant filed a petition for permission to appeal from the interlocutory, September 23, 2024, order in this Court. *See* Pa.R.A.P. 1311. While the petition was pending, a motions' panel of this Court *sua sponte* entered an order declaring that we would treat the Appellant's petition for permission to appeal as a notice of appeal. We thus dismissed the petition for permission to appeal as moot. Order, 3/18/25, at 1. This Court's order declares:

> Upon consideration of the December 13, 2024, petition for permission to appeal filed by [Appellant], and noting no response thereto, **the petition shall be treated as a notice of appeal pursuant to Pa.R.A.P. 1316(a)** (providing that appellate court shall treat request for discretionary review of immediately appealable order as appeal notice if party filed timely petition); *see also* Pa.R.A.P. 313(a) (stating appeal may be taken as of right from collateral order).
>
> The Prothonotary of this Court is DIRECTED to assign this matter a direct appeal number. **The petition for permission to appeal is DISMISSED** as moot.

*Id.* (some emphasis added) (some emphasis omitted).

This Court's March 18, 2025 order was apparently issued under the belief that the trial court's interlocutory, September 23, 2024 order satisfied the requirements of the collateral order doctrine.[1] While this appeal was

---

[1] Pennsylvania Rule of Appellate Procedure 313 defines a collateral order as one that: "1) is separable from and collateral to the main cause of action; 2) involves a right too important to be denied review; and 3) presents a question that, if review is postponed until final judgment in the case, the claim will be irreparably lost." *In re Bridgeport Fire Litigation*, 51 A.3d 224, 230 n.8 (Pa. Super. 2012); *see also* Pa.R.A.P. 313(b). Our Supreme Court has emphasized:
*(Footnote Continued Next Page)*

pending, however, the Pennsylvania Supreme Court decided ***Chilutti v. Uber Technologies, Inc.***, 349 A.3d 826 (Pa. 2026) and expressly narrowed the breadth of the collateral order doctrine's "irreparable loss" prong.

In ***Chilutti***, the plaintiffs filed a complaint against Uber Technologies, Inc., claiming that Uber acted negligently when it failed to provide the wheelchair-bound wife with a seatbelt during transport, thus causing her injuries. ***See Chilutti***, 349 A.3d at 828. "In response to the Chiluttis' complaint, Uber filed a petition to compel arbitration, arguing that, when the Chiluttis enrolled in Uber, they agreed to arbitrate the claims that they presented in their complaint." ***Id.*** The trial court granted Uber's petition to compel arbitration and stayed the court proceedings pending the result of the arbitration. ***Id.*** The Chiluttis then filed a notice of appeal and claimed that the trial court's order, granting the petition to compel arbitration, was immediately appealable as a collateral order. ***See id.*** at 828-829.

Our Supreme Court held that the trial court's order failed the third-prong of the collateral order doctrine and was, therefore, unappealable. In doing so,

---

> the collateral order doctrine is a specialized, practical [exception to] the general rule that only final orders are appealable as of right. Thus, Rule 313 must be interpreted narrowly, and the requirements for an appealable collateral order remain stringent in order to prevent undue corrosion of the final order rule. To that end, each prong of the collateral order doctrine must be clearly present before an order may be considered collateral.

***Melvin v. Doe***, 836 A.2d 42, 46-47 (Pa. 2003) (citations omitted).

the Supreme Court rejected the Chiluttis' argument that, "because they may incur a substantial loss of money in litigating this action in arbitration, the trial court's order compelling arbitration meets the requirements of the third prong of the collateral order doctrine." *See id.* at 833-834. Further, the *Chilutti* Court distinguished the case before it from its earlier opinion in *Pridgen v. Parker Hannifin Corp.*, 905 A.2d 422 (Pa. 2006). As the *Chilutti* Court explained, *Pridgen* involved:

> (1) complex litigation that followed a fatal aviation accident; and (2) a federal statute, the General Aviation Revitalization Act of 1994 (GARA), which Congress enacted to contain the costs of aviation-related litigation. . . . [T]he defendants in *Pridgen* filed motions for summary judgment, claiming that they were immune from suit under GARA. The trial court denied the motions. The defendants appealed to the Superior Court, which quashed the appeals on the basis that the trial court's orders were interlocutory and did not constitute collateral orders. [The Pennsylvania Supreme Court] granted allowance of appeal and held, in relevant part, that the orders denying the defendants' motions for summary judgment qualified as collateral orders.

> As to the third prong of the collateral order doctrine, [the *Pridgen*] Court opined:

>> With regard to the element of irreparable loss, we conclude that the substantial cost that the defendants will incur in defending this complex litigation at a trial on the merits comprises a sufficient loss to support allowing interlocutory appellate review as of right, in light of the clear federal policy expressed in GARA to contain such costs in the public interest. Consistent with the plaintiffs' arguments, we realize that future litigants may seek to extend our determination here more broadly to other statutes of repose. Nevertheless, balancing the potential vindication of the interest in freedom from tort claims created by Congress through GARA against the state

- 4 -

interest in curtailing piecemeal appellate review, we find that the former prevails relative to the review of controlling legal issues in the present cases.

*Pridgen*, 905 A.2d at 433.

*Chilutti*, 349 A.3d at 834 (footnotes and corrections omitted), *quoting Pridgen*, 905 A.2d at 433.

The *Chilutti* Court held that "*Pridgen* simply is inapplicable to this matter" because: "[u]nlike *Pridgen*, [the Chiluttis' case] does not involve costly complex litigation or a federal statute that expresses a legislative policy to contain litigation costs in specific cases. In addition, this matter does not have anything to do with a claim of immunity from suit." *Chilutti*, 349 A.3d at 834. Moreover, the *Chilutti* Court quoted, with approval, a concurring opinion from Justice Wecht, where Justice Wecht declared:

> [The Pennsylvania Supreme] Court has focused on the cost of litigation [in assessing the third prong of the collateral order doctrine] on at least one occasion, but that ruling was premised upon federal law supporting a clear policy of cost containment in aviation litigation. . . . If expenditure of resources when such expenditure could be avoided through an interlocutory appeal sufficed for [Pennsylvania Rule of Appellate Procedure] 313 purposes, then every interlocutory order presumably would satisfy the irreparable loss prong of the collateral order rule. The exception would devour the rule.

*Id.* (corrections in original), *quoting J.C.D. v. A.L.R.*, 303 A.3d 425, 442-443 (Pa. 2023) (Wecht, J. concurring).

Here, the trial court's interlocutory, September 23, 2024 order denied Appellant's motion for judgment on the pleadings; and, in that motion, Appellant claimed that the Plaintiff's medical malpractice action was barred by

the statute of limitations. With respect to the collateral order doctrine, Appellant's statute of limitations claim can always be raised at later points during the litigation (including on appeal from an adverse judgment) and, thus, does not "present[] a question that, if review is postponed until final judgment in the case, the claim will be irreparably lost." **See In re Bridgeport Fire Litigation**, 51 A.3d 224 at n.8. Further, any claim that the third-prong of the collateral order doctrine is satisfied because Appellant "may incur a substantial loss of money in litigating" this relatively simple medical malpractice action fails under **Chilutti**. **See Chilutti**, 349 A.3d at 834. Therefore, the trial court's September 23, 2024 order is not appealable under the collateral order doctrine.

In its effort to reach the merits of this appeal, the Majority attempts to *sua sponte* revive Appellant's petition for permission to appeal. **See** Majority Memorandum at *10 n.7. Unfortunately, however, that petition is no longer before this Court, as we expressly dismissed the petition in our March 18, 2025 order. **See** Order, 3/18/25, at 1. And, with no petition pending before this Court, we simply have no jurisdiction over this appeal. **See Commonwealth v. Yingling**, 911 A.2d 572, 575 (Pa. Super. 2006) (holding: "when a party seeks discretionary review of an interlocutory order, and the trial court properly certifies such an order for immediate appeal, if no petition for permission to appeal is filed with the appellate court, the appeal will be quashed, as we are without jurisdiction to exercise our discretion in this regard") (quotation marks, citations, and corrections omitted).

Further, even though the Majority's actions attempt to strike an equitable result in light of this Court's mistaken, *sua sponte*, March 18, 2025 order, the issue at hand concerns our subject matter jurisdiction. **See McCutcheon v. Phila. Elec. Co.**, 788 A.2d 345, 349-350 (Pa. 2002) ("[i]n this Commonwealth, there are few legal principles as well settled as that an appeal lies only from a final order, unless otherwise permitted by rule or by statute"). As our Supreme Court has held, "the parties may not stipulate appellate jurisdiction in disregard of statutory procedures. Nor may jurisdiction be conferred through the approval of such agreements by the court." **Commonwealth v. Yorktowne Paper Mills, Inc.**, 214 A.2d 203, 205 (Pa. 1965) (citations omitted). Moreover, "it is well settled that a judgment or decree rendered by a court which lacks jurisdiction of the subject matter . . . is null and void." **Strasburg Scooters, LLC v. Strasburg Rail Rd., Inc.**, 210 A.3d 1064, 1067 (Pa. Super. 2019). Thus, and respectfully, while the Majority attempts to do the right thing in this case, its action in the absence of subject matter jurisdiction leaves both parties worse off, as "[t]he want of jurisdiction over the subject-matter may be questioned at any time. It may be questioned . . . for the first time in an appellate court, and it is fatal at any stage of the proceedings, even when collaterally involved." **In re Patterson's Estate**, 19 A.2d 165, 166 (Pa. 1941) (quotation marks and citations omitted).

I believe we must quash this appeal. Therefore, I respectfully dissent.